GALBREATH-RUFFIN CORPORATION, Appellant, *v.* 40TH AND 3RD CORPORATION et al., Respondents.

First Department, March 3, 1966.

116

*Seymour M. Klein* of counsel (*Richard W. Wallach* with him on the brief; *Lynton Klein Opton & Saslow,* attorneys), for appellant.

*Howard Henig* of counsel (*Donald Zimmerman* and *Seymour Howard* with him on the brief), for respondents.

STEVENS, J. This is an action for brokerage commissions allegedly due plaintiff on six leases pursuant to two separate written brokerage employment agreements.

June 24, 1960, following conversations between Peter Ruffin and Larry Fisher, a written agreement was executed. Fisher purported to sign on behalf of a corporation or corporations to be formed to acquire certain land known as 605 Third Avenue, Manhattan, which had been assembled by the principals of plaintiff, and erect a structure thereon, and Ruffin signed as executive vice-president of plaintiff corporation. By the terms of the agreement plaintiff was employed as exclusive renting agent of the proposed commercial building, with commissions on leases obtained by it to be computed in accordance with rates recommended by the Real Estate Board of New York, Inc. On leases obtained by outside brokers plaintiff was to receive an override commission of 50% of the rates recommended by the Real Estate Board, the aggregate of such commissions, however, not to exceed $125,000. The agreement, by its terms, could be cancelled upon 60 days' written notice by registered mail.

Plaintiff asserts that on or about October 24, 1960, defendant corporations acquired title to the premises and a 44-story commercial structure was erected. (Defendants say they acquired their interest in 1961.) The building was completed about late 1962 or early 1963, and the first tenant moved in in April, 1963. By March, 1962, leases were executed and delivered to defendants with Kudner Agency, Inc., American Gas Association, Inc., John Wiley & Sons, Inc. and Bendix Corporation. Only the Bendix Corporation lease was executed through plaintiff's direct efforts, the three remaining leases having been procured through outside brokers. The first cause of action in the complaint deals with commissions allegedly due from all the leases and is based on the letter agreement of June, 1960. The second, third, fourth and fifth causes each deals separately with one particular lease, and each is based on an account stated. These causes are all based on claims arising from the 1960 agreement.

On or about April 8, 1962, defendants terminated the 1960 agreement by a notice of termination given on or about February 8, 1962.

On or about September 13, 1963, plaintiff and defendants entered into a written agreement whereby defendants undertook to pay certain commissions to plaintiff at Real Estate Board rates upon the execution and delivery of a noncancellable agreement of lease between defendants and Trans-World Airlines, Inc. (TWA). TWA on that date, September 13, 1963, executed a written agreement of sublease, dated as of September 3, 1963, subleasing the 34th through 36th floors of the building. Subsequently TWA leased space on the 43d floor also. The 6th and 7th causes of action deal specifically with commissions allegedly due as a result of those leases.

The 8th and 9th causes of the complaint deal with commissions claimed due under a lease with Hewitt Associates, Inc. An allowance was made and that item is not presently in dispute.

In all instances referred to as represented by the various causes of action, some payments had been made, and the causes really represented installments or balances to which plaintiff asserted it was entitled. The second, third, fourth causes, and a part of the first cause, represented a claim for override commissions.

The defendants in their answer admitted the execution of the writings, interposed denials and asserted as a defense and counterclaim for loss of income and profits that plaintiff did not employ an adequate and efficient organization to solicit and obtain tenants. In their amended answer the defendants alleged failure of consideration and illegality, in that Shannon who, defendants allege, did most of the work, was not licensed or authorized to act as a real estate broker for plaintiff. Defendants counterclaimed for damages and recovery of not less than the commissions paid, nor more than four times the sum so received.

It is from an order and judgment entered thereon insofar as it denied plaintiff's motions for partial summary judgment, dismissed the complaint, denied plaintiff's motion to dismiss the affirmative defenses and counterclaims, and severed the first, second, third and fourth counterclaims in the amended answer, directing an early trial thereof, that this appeal is taken.

The tenuous argument that defendants never approved, ratified or accepted the June, 1960 agreement executed by Larry Fisher, president of the 40th and 3d Corporation, and possibly an officer of Hawaiian Realty Inc. as well, is totally without merit. Commissions were paid by defendants in accordance with the terms of the agreement as was the notice of termination given to plaintiff. All parties acted as if the 1960 agreement were valid and subsisting.

As pointed out earlier, certain of the causes of action deal with plaintiff's claim for override commissions on leases negotiated by outside brokers. The June, 1960 agreement specifically provided: "(b) On any lease negotiated and consummated by an outside broker, we shall be paid a commission equal to 50% of the rate mentioned in subparagraph (a) above [i.e., rates recommended by the Real Estate Board of New York, Inc.] with the further understanding that the aggregate commissions payable to us on an override basis for all leases shall, in no event, exceed $125,000.00." That language, in a very particular sense, recognized that "[T]hey also serve who stand and wait." Nothing was thereby required to be done by this plaintiff, and if illegality tinged any portion of plaintiff's performance, that dealing with override commissions escaped the deficiency. This will be because with respect to overriding commissions there is no performance by plaintiff through any unauthorized person. Rather, plaintiff as a licensed broker could earn such overriding commissions by virtue of its own license and actual performance by the outside broker. There can be no illegality in the payment or acceptance of money honestly earned when parties, bargaining at arm's length, have freely recognized an obligation and consented so to do. The court is in full agreement that the claim for override commissions is valid and not subject to foreclosure by an assertion of the defense of illegality. This applies to the claims for commissions with respect to the Kudner Agency, Inc., American Gas Association and John Wiley & Sons, Inc. leases.

Turning our attention now to the Bendix lease, it is not disputed that such lease was negotiated by plaintiff. This lease, according to the complaint, was negotiated on or about March 14, 1962. In order to assess the force and validity of defendants' argument with respect to illegality we look to the status and personnel composition of plaintiff, and by whom the services were rendered on its behalf. Defendants' contention as to Shannon and plaintiff is outlined above. More particularly defendants refer to and cite sections 440-a and 441-b of the Real Property Law as it existed at the times of plaintiff's alleged performance. The sections read:

"§ 440-a. License required for real estate brokers and salesmen. No person, co-partnership or corporation shall engage in or follow the business or occupation of, or hold himself or itself out or act temporarily or otherwise as a real estate broker or real estate salesman in this state without first procuring a license therefor as provided in this article. No person shall be entitled to a license as a real estate broker under this article,

either as an individual or as a member of a co-partnership, or as an officer of a corporation, unless he is  *  *  *  a citizen of the United States ''.

'' § 441-b. License fee. 1. The fee for a license issued or reissued under the provisions of this article entitling a person, co-partnership or corporation to act as a real estate broker shall be fifty dollars. The fee for a license issued or reissued under the provisions of this article entitling a person to act as a real estate salesman shall be ten dollars.

'' 2. Corporations and co-partnerships. If the licensee be a corporation, the license issued to it shall entitle the president thereof or such other officer as shall be designated by such corporation, to act as a real estate broker. For each other officer who shall desire to act as a real estate broker in behalf of such corporation an additional license expiring on the same date as the license of the corporation shall be applied for and issued, as hereinbefore provided, the fee for which shall be the same as the fee required by this section for the license to the corporation. No license as a real estate salesman shall be issued to any officer of a corporation or to a member of a co-partnership licensed as a real estate broker. If the licensee be a co-partnership the license issued to it shall entitle one member thereof to act as a real estate broker, and for each other member of the firm who desires to act as a real estate broker an additional license expiring on the same date as the license of the co-partnership shall be applied for and issued, as hereinbefore provided, the fee for which shall be the same as the fee required by this section for the license to the co-partnership. In case a person licensed individually as a real estate broker thereafter becomes an officer of a corporation or a member of a co-partnership an application shall be made in behalf of such corporation or co-partnership for a broker's license for him as its representative for the remainder of the then current license term, provided that the license and pocket card previously issued to the licensee in his individual capacity shall have been returned to the department whereupon the department shall cause a properly signed endorsement to be made without charge on the face of such license and pocket card as to such change of license status and return the license and pocket card to the licensee.''

With respect to the Bendix lease plaintiff alleges an account stated and payment by defendants of three installments of commissions as they became due, and a failure thereafter to pay further commissions. The amounts paid were apparently in accordance with the schedule provided for in the 1960 letter agreement. The defendants interpose denials to the allegations,

but in their counterclaim assert such payments were made to plaintiff as commissions.

Documents in the record list plaintiff as a real estate broker and reveal that for the period commencing September 19, 1960 through a part of October, 1963, the person designated to represent plaintiff as a broker was Peter B. Ruffin.

In the affidavit of Ruffin, a licensed New York real estate broker for more than 30 years, he asserts that at the time of his conversations with Larry Fisher prior to the 1960 letter agreement he informed Fisher he was associated as a broker with John H. Galbreath & Co., Inc., and that he planned to have Galbreath-Ruffin Corporation become licensed as a real estate broker. Accordingly, the agreement was put in the name of plaintiff. Title to the property closed October 24, 1960. However, in July, 1960, Ruffin had applied for licensing of plaintiff and such license was issued August 11, 1960. Ruffin states he indicated to Fisher that John W. Galbreath & Co., Inc. would co-operate and work with plaintiff to procure tenants, and that he introduced to Fisher, Philip Shannon, a duly licensed New York real estate broker designated to act on behalf of John W. Galbreath & Co., Inc. as an experienced broker who would be able to render valuable assistance to and co-operate with plaintiff in its efforts to line up tenants. The individual, John W. Galbreath, is not licensed as a real estate broker in New York. Shannon, a licensed broker since 1948, and also a vice-president of plaintiff, was designated to represent John W. Galbreath & Co., Inc. as a broker. Incidentally, on September 30, 1963, plaintiff wrote to the Secretary of State requesting that Shannon's license be transferred to it, and such transfer was completed October 21, 1963. Ruffin asserts that Galbreath & Co., Inc. did co-operate, through Shannon's activities, but that all negotiations were subject to Ruffin's supervision. Prior to Shannon's qualifying as a broker he had been a licensed real estate salesman since about 1941, and since 1956 he has continuously held a broker's license. The hiatus since 1948 or 1949, when he surrendered his broker's license, was occasioned by his acting in such period as a real estate salesman.

Thus we have a situation where two closely related corporations worked out of the same address and the same office, where Shannon, authorized to act for one, John W. Galbreath & Co., Inc., and also an official of the plaintiff, rendered certain services to defendants. The record leaves little doubt that these defendants were aware of the relationship and the individual status. Since the defendants executed the leases referred to, they accepted the benefits. The pivotal question to be resolved

is whether under the circumstances here present the statutory defense may be availed of as against this plaintiff. In other words, accepting defendants' version of the relationship between the parties, and even though Shannon was an authorized broker for John W. Galbreath & Co., Inc., does the failure of plaintiff to secure an additional broker's license for Shannon by payment of the required fee, bar recovery of commissions on the Bendix and the TWA leases? (The TWA lease will be discussed further.) Since defendants assert Shannon did most, if not all, of the work in negotiating the Bendix lease, which was accepted and executed by defendants, had John W. Galbreath & Co., Inc. sued as a broker for commissions they might have been entitled thereto, with this plaintiff entitled to an overriding commission thereon. But that is not the situation here. Of course, a real estate broker is permitted to split fees or commissions with another duly licensed real estate broker (Real Property Law, § 442), and plaintiff and Galbreath & Co., Inc. could have split earned commissions for services rendered. Nor was there any prohibition upon their actively co-operating, though of course they could not saddle defendants with double fees in light of their close relationship and the 1960 agreement.

Under New York law a corporation is recognized as a distinct entity, separate and apart from those who comprise it. However, a corporation must necessarily act through individuals. At no time did Shannon purport to act as an individual in his own behalf or for Galbreath & Co., Inc. as the contract broker, and certainly as an individual he could not sue and recover commissions. Ruffin, the designated and authorized representative of plaintiff, asserts that all negotiations were conducted under his supervision. Plaintiff, by asserting a claim for commissions, has placed the stamp of corporate approval upon such negotiations. The fact that Shannon, a broker for Galbreath & Co., Inc., worked in co-operation with Ruffin, authorized broker for plaintiff, should not bar plaintiff from recovery especially when it is noted that Fisher does not deny Ruffin's sworn statements that Fisher was informed Galbreath & Co., Inc. would co-operate with plaintiff in obtaining tenants. Nor does Fisher deny Shannon's sworn statement that " He was thoroughly familiar with the fact that I was a duly licensed broker, that I represented John W. Galbreath & Co., Inc., and that I was working in cooperation with Mr. Ruffin of Galbreath-Ruffin Corporation ". The only denials are by the attorney for defendants. Under this aspect of the case plaintiff should be allowed recovery (cf. *Kernan & Co.* v. *Smith*, 125 Misc. 108).

In *Brener & Lewis* v. *Fawcett Pub.* (197 Misc. 207, affd. 276 App. Div. 994, mot. for lv. to app. den. 276 App. Div. 1081), a motion to strike out the first and second defenses for alleged insufficiency was denied. The first defense, if proved, would have negated plaintiff's claim that its offer of a customer was accepted by defendant and also its claim that it was employed by defendant. The second defense pleaded that plaintiff was represented in the negotiations by Brener, its vice-president, who had been issued a real estate salesman's license, and alleged a violation of section 441-b of the Real Property Law. The court noted and quoted the provision in question " [n]o license as a real estate salesman shall be issued to any officer of a corporation nor to a member of a co-partnership licensed as a real estate broker ", and held such license void, and the defense that Brener was not " duly " licensed sufficient. (See, also, *Magoba Mgt.* v. *Central Zone Prop. Corp.*, 3 Misc 2d 824.) As heretofore indicated, in our view that is not the precise situation before us. Ruffin, in his affidavit, swore that John Galbreath, the individual, was not a licensed broker, that he never represented, and indeed could not represent, to Fisher that such individual would assist in procuring tenants, but that he did assure Fisher that John W. Galbreath & Co., Inc., a licensed brokerage firm for which Shannon was authorized broker, and with which Ruffin had close relations, would assist. Plaintiff was not even licensed at the time. Fisher does not deny these allegations under oath. Fisher merely asserts Ruffin was rarely involved personally in the solicitation of tenants, that he met with Shannon and Ruffin in February, 1962, and told them he was terminating the 1960 agreement, and also a conclusory statement that " Shannon acting in behalf of the plaintiff," participated in obtaining Bendix. Only to that extent does Fisher, who alone had personal knowledge of his conversations with Ruffin, deny Ruffin's sworn assertions, or even the sworn assertion of Shannon that Fisher knew Shannon was a licensed broker representing John W. Galbreath & Co., Inc. working in co-operation with Ruffin representing plaintiff, and that Shannon discussed this with Fisher.

In *Ronan* v. *Lobe* (243 N. Y. 51) it was held that the requirement of a license for a real estate broker is a constitutional exercise of legislative power. The court (per CARDOZO, J.) observed: " The real estate broker is brought by his calling into a relation of trust and confidence " and recognized the " perils of incompetence." The court stated: " The intrinsic nature of the business combines with practice and tradition to

attest the need of regulation " (p. 54). Recovery of a commission was denied to a broker who rendered the service after his license had expired.

In the case before us even assuming Shannon acted for plaintiff, since he was in fact a licensed broker he remained subject to regulation and discipline by the State. His license attested to his competence. The perils adverted to in the *Lobe* case are not here present. " The purpose of article 12-A [Real Property Law] was to assure by means of licensing competency and the observance of professional conduct on the part of real estate brokers and salesmen " (*Matter of Sullivan Co., Inc.,* 289 N. Y. 110, 114; see, also, *Matter of Solk* v. *Department of State,* 286 App. Div. 178). " It is a principle of statutory construction that the court should look at the old law, the mischief and the proposed cure and construe the act in question so as to suppress the evil and advance the remedy " (*Matter of Sullivan Co., supra,* p. 114). " A thing which is within the intention of the makers of a statute is as much within the statute as if it were within the letter; and a thing which is within the letter of a statute is not within the statute, unless it be within the intention of the makers. The writers of laws do not always express their intention perfectly, but either exceed it or fall short of it, so that judges are to collect it from probable or rational conjecture only, and this is called rational interpretation " (*Riggs* v. *Palmer,* 115 N. Y. 506, 509). " In some cases the letter of a legislative act is restrained by an equitable construction; in others it is enlarged; in others the construction is contrary to the letter " (*ibid.,* p. 510). " The thought behind the phrase proclaims itself misread when the outcome of the reading is injustice or absurdity [cases cited]. Adherence to the letter will not be suffered to ' defeat the general purpose and manifest policy intended to be promoted ' " (*Surace* v. *Danna,* 248 N. Y. 18, 21).

As heretofore pointed out, the statute requires that each officer desiring to act as a real estate broker in behalf of a corporation, in addition to the officer designated as broker by such corporation, pay a set fee (Real Property Law, § 441-b). The annual fee, formerly set at $25 for the corporate license and one half of that amount for each additional officer desiring to be licensed, is now fixed at $50 for the annual corporate license as well as for each additional officer desiring to be licensed. It may be, as is asserted by appellant, that this requirement is primarily designed to produce additional revenue, and was never intended to apply to a situation such as that presently before us. Shannon, being a duly licensed broker,

though not licensed to appellant at the times herein involved, had a demonstrated competency and presumed trustworthiness by reason of his unrevoked license. Another possibility which should not be overlooked is that the requirement in question is a purely regulatory device. It must be remembered that the statute permits a broker to be accredited to more than one employer (1963 Atty. Gen. 48–49). Neither the argument nor the existence of the possibility establishes the fact. Respondents' contention that the requirement is part of an inseparable whole dealing with qualifications, and the failure to pay the fee permits interposition of a valid defense of illegality, and is an insurmountable barrier to recovery, cannot be rejected out of hand. The position of the section (441-b) in article 12-A, and the changes earlier referred to lend some credence to appellant's theory. The fact is, however, we do not know its purpose or limitations. The equities, which apparently are with appellant, cannot prevail if the law mandates a contrary disposition. It does not appear from the briefs or the record what interpretation, if any, has been placed on this requirement by the Department of State which is charged with responsibility for administration of this law. In light of the scope and importance of the issue, which doubtless will recur, the views of the department should be ascertained as well as what practical construction has been heretofore given by the department in dealing with the problem. For that reason the issue should not be summarily disposed of but explored and the parties put to their proof at a trial.

The claim of defendant as an aggrieved person to recover up to a quadruple amount for commissions paid is asserted pursuant to section 442-e, which section makes a violation of article 12-A a misdemeanor and mandates a prosecution by the Attorney-General or his deputy in the name of the People of the State. The same section allows the Secretary of State to enforce the provisions of article 12-A, and to act upon any complaint or even upon his own initiative. Section 442-e "is penal in its nature, and under general rules of construction must be strictly construed against the person seeking to enforce the penalty and in favor of the one proceeded against. Where there exists any reasonable doubt whether the penal statute applies to a particular case, the party of whom the penalty is claimed shall have the benefit of the doubt" (*Meyer* v. *Stein*, 161 Misc. 91, 91–92, affd. 247 App. Div. 865; McKinney's Cons. Laws of N. Y., Book 1, Statutes, §§ 271, 272).

The defendants' claims of negligence, failure to use best efforts and to perform diligently are not borne out by the record.

Approximately 40% of the building was rented during the existence of the 1960 agreement which had been signed by Ruffin and Fisher. That agreement by its terms could be cancelled at any time. But defendants had paid over a period of time in accordance with its terms and the account as stated, without evidencing any dissatisfaction with performance. Defendants do not now claim any fraud or mistake in the accounts, and defendants have not established bad faith.

As to the claim for commissions on the TWA lease, while the lease by its terms recognizes that plaintiff corporation acted as broker in its negotiation and bound the defendants to pay commissions and expenses therefor, and in fact defendants have paid plaintiff the excess of $30,000 commissions, there is a question as to the application of the lease term to the 43d floor, the date the lease took effect and the possible status of plaintiff or Shannon at such time. Those issues may properly be resolved upon a trial.

The order and judgment entered thereon, herein appealed from, should be modified on the law to grant partial summary judgment to plaintiff for commissions due on the causes of action dealing with the override commissions and to dismiss the affirmative defenses and counterclaims with respect thereto. Those causes dealing with commissions due on the Bendix and TWA leases should be remanded for trial. The defense of illegality, however, stands subject to the views expressed in this opinion. As so modified the order and judgment should be otherwise affirmed, with costs and disbursements to plaintiff-appellant.

BREITEL, J. P., McNALLY and STEUER, JJ., concur. VALENTE, J., deceased.

Order and judgment modified on the law to grant partial summary judgment to plaintiff for commissions due on the causes of action dealing with the override commissions and to dismiss the affirmative defenses and counterclaims with respect thereto. Those causes dealing with commissions due on the Bendix and TWA leases are remanded for trial. The defense of illegality, however, stands subject to the views expressed in the opinion of this court filed herein. As so modified the order and judgment are otherwise affirmed, with $50 costs and disbursements to plaintiff-appellant. Settle order on notice.