OPINION OF THE COURT
Martin Evans, J.
Motions Nos. 88, 90, 216 and 217 of April 12, 1982 are consolidated for disposition.
These two cases, which appeared on the same date on the Motion Calendar, involve the same matters, arose from the same transaction and involve, with few exceptions, the same parties. The motions are therefore consolidated for disposition.
The single derivative cause of action in the Karfunkel case alleges, in substance, that the individual defendants, some of whom are directors and some of whom are officers of USLIFE Corp. caused the corporation to purchase approximately 6% of its common stock from American General Corp. at a price higher than its then market value, for the sole purpose of enabling the defendants to maintain their positions as directors and officers of USLIFE, and to remove a threat or potential threat to the continuance of their control of the corporation.
The first cause of action, a derivative one, in the Brenner case, alleges that some of the defendants committed the acts for the personal purpose of retaining their positions and that other defendants negligently permitted this to occur; in the second cause of action (also derivative but not relevant to this motion), it is alleged that American General Corp., by reason of its stock position, owed a fiduciary duty to USLIFE and to the stockholders of USLIFE Corp. and that it breached this duty by inducing USLIFE Corp. to purchase the stock at a price higher than its true value.
In the third cause of action, not as a derivative cause of action but as a direct action by the plaintiff against the corporation and its directors, plaintiff claims that the defendants should have attempted to purchase the stock of the plaintiff’s and the class he wishes to represent, on the *843 same terms on which the stock was purchased from American General Corp.
Plaintiffs seek various items of relief, including cancellation of the purchase agreement, damages to the corporation, and damages to themselves by reason of not being able to sell their stock to USLIFE Corp. on the same terms.
In Karfunkel, defendants USLIFE Corp. move to dismiss, on the ground that plaintiff Karfunkel does not have legal capacity to sue, claiming that she was not a shareholder according to the records of USLIFE at the date of the transaction and continuously thereafter, which is mandated by subdivision (b) of section 626 of the Business Corporation Law. It is settled law that plaintiff must demonstrate that she was a shareholder at the time of the transaction, at the time of trial and at the time of entry of judgment. (Tenney v Rosenthal, 6 NY2d 204; Independent Investor Protective League v Time, Inc., 50 NY2d 259.) Plaintiff submitted a March, 1981 confirmation slip indicating the purchase of 3,000 shares as well as a brokerage account statement for the month of January, 1982, showing her ownership or recent purchase of 400 shares. There is, therefore, an inference of continuous ownership, which was not rebutted on this motion, although it may be rebutted at trial.
That the shares were held for her by a nominee does not detract from her ownership; it is not necessary that she be a shareholder of record so long as she was the true owner of the shares. That motion is accordingly denied.
In Brenner v Baughman et al., defendant USLIFE Corp. moves to dismiss the third cause of action on the ground that it fails to state a cause of action; and moves against the first and second causes of action on the ground that plaintiff lacks legal capacity to sue. Defendants Baughman and Strong move to dismiss the first and second causes of action on the grounds that they are insufficient in law. They also request, pursuant to CPLR 3211 (subd [c]) that their motion be treated as one for summary judgment.
The right of plaintiff Brenner to sue has been shown by exhibits submitted as part of a memorandum of law. (This should have been submitted in an affidavit, but the court will overlook this irregularity.)
*844 The motions by USLIFE, Baughman and Strong, to dismiss the third cause of action on the ground that it fails to state a cause of action is granted. This cause of action is grounded upon the claim that a corporation, when it purchases some of its stock from a stockholder, above the market price, must offer the same terms and conditions of its purchase to all other stockholders on a pro rata basis. There is no such duty. Plaintiffs cite the case of Traub v Barber (86 AD2d 806) in support of that proposition. That proposition was only incidentally discussed in Traub, and not as a separate proposition of law, presented to or passed upon by the Appellate Division. Even at Special Term, the court did not consider it as a separate proposition, but allowed it to survive on the basis that it was claimed to have involved “the same alleged conspiratorial framework between Bendix and the director defendants on the issue of breach of directorial duties, and for analogous reasons the class claim survives, at this juncture, the motion to dismiss.”
If there was a breach of fiduciary duties in Bendix, it was essentially based on the theory that there was no valid business purpose in the purchase of the shares from the controlling stockholders. If that were to be proved, the damages to the corporation would have been identical in amount to the total damages sustained by the individual stockholders and payment to the corporation would have repaired the damages, if any, to the individuals.
Although the plaintiff’s individual claim, that the corporation had the duty to make a pro rata procedure offer to all stockholders at the price offered to the seller, seems to have a surface fairness about it, on analysis it does not withstand scrutiny, and it would .cause far more difficulty, hardship and inequity than the rule sought by plaintiffs.
If that duty exists, it must exist as a separate duty, not dependent upon a breach by the directors and officers of their duty to the corporation. For if it came into existence only when the directors breached their duty to the corporation, then the damage is easily remediable through the well-established mechanism of the derivative lawsuit.
Indeed, there may be situations in which a pro rata offer to all shareholders, on an open basis, might well be con *845 trary to the best interests of the corporation, and the directors and officers would thus be placed in a position of conflicting duty if they were required to do that.
We start the analysis by examining the applicable statutes. The defendant, a stock corporation, is organized under the laws of the State of New York.
Under section 202 (subd [a], par [14]) of the Business Corporation Law effective September 1, 1963, a New York corporation is given wide powers to deal in its own shares. Section 513 (subd [a]) limits the right to purchase its own shares by requiring that the purchase be made out of surplus unless the corporation is, or would be, rendered insolvent. There is no statutory requirement that a purchase offer be made, pro rata, to all stockholders.
A corporation may deem it necessary to purchase its shares for many reasons. It may receive them in payment of bad or doubtful debts or for other reasons. (See Business Corporation Law, § 202, subd [a], par [14]; see, also, Booth v Dodge, 60 App Div 23; Melniker v American Tit. & Guar. Co., 253 App Div 570.) It may require them to meet the exercise of stock options. It may need them for an employees stock ownership plan. (US Code, tit 26, § 4975, subd [c], par [7].) It might need them to purchase assets, or to trade for the stock of other corporations. Such shares might be reserved against the conversion of convertible shares or debt.
The purchase might be made to remove the threat of a corporate raider whose ultimate goal might result in harm to the long-term aims of the corporation.
This free right to purchase stock, with no limitations except the presence of fraud or overreaching or the impairment of capital or harm to creditors, has long been the rule in New York, even in the absence of statute. (Richards v Wiener Co., 207 NY 59.) In Moses v Soule (63 Misc 203, 209, affd 136 App Div 904), it was said: “In the management of corporations few things are more apparent than the desire to keep control of the same in the hands of people who are congenial to the enterprise and to those who manage its affairs. A quarreling directorate is a misfortune to the stockholders of any corporation. Where such situations *846 occur, as they often do, there is no objection to the purchase by the corporation of the shares of the disgruntled stockholders and the resale of the stock to those more in harmony with the enterprise * * * I find nothing in all this against public policy. On the contrary, it has to do solely with common sense and practical business.”
The motion by defendants to treat their motions as one for summary judgment, with respect to the cause of action in the Karfunkel complaint, and as to the first cause of action in the Brenner complaint, is granted. Plaintiffs have collected such evidence as is available to them; essentially all that remains is an interpretation of the facts shown by the affidavits and documents. Although plaintiffs seek further discovery, and request a stay of the determination of the pending motions, there is no showing that there are any other documents or facts which have not been presented on.these motions.
The facts which appear from the affidavits are undisputed. American General Corp. had acquired approximately 6% of the shares of USLIFE Corp. over a period of approximately four years. Defendants became aware of that in December, 1980. Although it was possible for American General to seek control of USLIFE, it never did so.
In November of 1981, some 11 months later, defendants, seeking to obtain this stock for corporate purposes, initiated negotiations with American General which resulted in the purchase of 1,298,500 shares of USLIFE Corp. stock at $28 per share. American General continued to hold 191,800 shares of the series D preferred stock, which was convertible into 166,784 shares of USLIFE common stock, and remained free to purchase common or preferred shares of USLIFE stock as it desired.
Of the four members of the executive committee of the board of directors of USLIFE, all of whom voted to authorize the transactions, only one, Gordon Crosby, was an officer or employee of USLIFE. The other three members were, although directors of USLIFE, neither officers nor employees.
Of the full 16-member board of directors, all of whom approved the transaction, only 3 are officers or employees *847 of USLIFE, 2 others are employed by organizations which may be said to have significant relations with USLIFE; at least 11 appear, without contradiction, to be entirely independent. There were several good business reasons for the acquisition of the shares purchased in the transaction.
The purchase price of the stock at $28 was above the market price of $22.25 but below the book, or intrinsic value. The purchase resulted in an increase of the book value of the remaining shares, and an increase in the earnings per share of the outstanding shares. Had the seller placed the shares on the open market, the market price would have dropped. It is clear that these factors show that, as to the other stockholders, the transaction resulted in an improvement of their condition.
By the test, of whether the transaction was fair to the corporation, there is no showing by defendants that it was not. Plaintiff Brenner had, himself, purchased his 700 shares, according to his letter, at an average cost of $27.50 per share. The current price of the shares had, by March of 1981 gone from $19.50 to a high of $34 and thereafter until June, 1981 had not been less than $27.
USLIFE, with potential requirements to convert its preferred stock into 3,259,581 shares of common stock and to issue 582,616 shares of common stock if various options were exercised only had 3,259 shares in its treasury. While it could have issued new shares, that would have had the effect of diluting the value of the existing shares.
To have shares available for mergers and acquisitions is a normal corporate purpose. Exhibit D annexed to the affidavit of the attorney for plaintiff Karfunkel shows that USLIFE does grow by acquisitions.
If, with only 3,259 shares already in its treasury, US-LIFE was to enter the market to purchase 500,000 or 1,000,000 shares for acquisition purposes, it well might not be able to do that except at an exorbitant price. To have a block of the size purchased, on hand, and at a reasonable price, is clearly within the sound discretion of the directors.
There is no showing, and not even a claim, that any of the directors personally profited by this transaction. The schedule 13D filing by American General, on which plain *848 tiffs base their claims, show only that while American General stated that it had many options, it did not have any plans to acquire control of USLIFE. The allegations of plaintiffs that the individual directors sought in this manner solely to assure themselves of continued control, when there was no tangible threat to that control, when several proper business purposes have been demonstrated, when the purpose benefited the remaining stockholders and was at a fair price, is mere surmise and speculation. This is insufficient to withstand this motion for summary judgment, which calls upon plaintiffs to set forth facts sufficient to demonstrate factual issues. The motions for summary judgment are accordingly granted and the cross motions seeking discovery are denied.
It is well established that plaintiff is not permitted to engage in discovery without first providing factual allegations of evidentiary value and not to conduct a fishing expedition.
Discovery in stockholders’ derivative suits is allowed only under a showing of a meritorious cause of action and special circumstances (Stull v Studebaker Corp., 30 AD2d 527). As the court stated in Greenbaum v American Metal Climax (27 AD2d 232), “Such actions are a heavy burden upon the courts and litigants. Consequently, the summary judgment remedy should be fully utilized and given due effect to challenge such an action which appears to be in the nature of a strike suit or otherwise lacks apparent merit. Where, as here, the defendants upon the motion for summary judgment, make a proper factual showing of the legality, propriety and fairness of the occurrences and transactions set up as the basis for the action, the plaintiffs must be prepared to come forward with proof that they do in fact possess a case. They are bound to bear in mind that matters depending on business judgment are not actionable.” (See, also, Heit v Stone, 34 AD2d 628.)
Allegations such as these which are inferential and conclusory alleging vague notions of impropriety are insufficient to warrant discovery.