Judith SNYDER, Plaintiff,

v.

**PLEASANT VALLEY FINISHING CO., INC., Pleasant Valley Finishing Co., Inc., Liquidating Trust, Robert Judell and Leonard Turetzky, Defendants.**

No. 90 Civ. 0807 (SWK).

United States District Court,
S.D. New York.

Nov. 8, 1990.

Salon, Marrow & Dyckman by Liviu Vogel, New York City, for plaintiff.

Hankin, Hanig, Stall & Caplicki by Joel D. Hanig, Poughkeepsie, N.Y., for defendants.

## MEMORANDUM OPINION AND ORDER

KRAM, District Judge.

Plaintiff brings this action, styled as a shareholder derivative suit, to recover a $120,000 payment by defendants Pleasant Valley Finishing Co., Inc. ("Finishing"), Robert Judell ("Judell") and Leonard Turetzky ("Turetzky") to Turetzky through an entity called LST Realty, during the "winding down" of Finishing. The complaint alleges that such $120,000 payment to Turetzky is inconsistent with his fiduciary obligations as a director of Finishing and as a trustee of Pleasant Valley Finishing Co., Inc., Liquidating Trust (the "Liquidating Trust"). Defendants interposed an answer to the complaint denying its material allegations and raising various affirmative defenses.

Defendants now move for an order, pursuant to 28 U.S.C. § 1332(a), dismissing the complaint for lack of subject matter jurisdiction, pursuant to Rule 17(a) of the Federal Rules of Civil Procedure, dismissing the complaint for lack of a real party in interest and, pursuant to Local Rules 21(a) and 22 of the Rules of the Southern District of New York, directing reassignment

of the case to the White Plains Division of this Court. Plaintiff cross-moves for an order granting her leave to amend the complaint, and disqualifying defendants' counsel from representing any party to this litigation.

## Background

Through February 25, 1981, Pleasant Valley Textiles Inc. ("Textiles") was a New York corporation, having as its sole shareholders Judell and plaintiff's decedent, Joseph R. Snyder ("Snyder"). Judell and Snyder each held a 50% interest in Textiles. On February 25, 1981, Snyder died leaving a will (the "Will") appointing plaintiff Executor, and appointing plaintiff and Sheldon Snyder, decedent's son, trustees (the "Trustees") with respect to the residuary estate, consisting of, among other things, decedent's intangible personal property. Will art. THIRD. The Will grants the residuary estate to the Trustees and directs them to hold it in a separate trust for the remainder of plaintiff's life, with payments of income and/or principal to be made to plaintiff in accordance with the provisions of article THIRD of the Will.

Through December 22, 1988, defendant Finishing was a New York corporation engaged in the business of textile processing, having as its shareholders Turetzky and Textiles. On that date the directors and shareholders of Finishing unanimously agreed to adopt a liquidation plan for Finishing which, among other things, created the Liquidating Trust. In accordance with Finishing's liquidation plan, Turetzky received one unit of beneficial interest in the Trust, and Textiles two units. By agreement dated December 28, 1988 by and between Finishing, Judell and Turetzky, Finishing's liquidation plan was effectuated.

By separate agreement dated December 28, 1988, by and between Textiles, Judell and plaintiff as Executor of decedent's estate (the "Transfer Agreement"), Textiles also adopted a plan of liquidation. In accordance with the Transfer Agreement, Textiles' shareholders surrendered their shares which were redeemed and cancelled by Textiles in exchange for two units of beneficial interest in the Liquidating Trust.

On December 28, 1988, Finishing paid to Turetzky, through an entity called LST Realty, the sum of $120,000 in connection with the sale of certain of Finishing's assets. In January 1989, plaintiff executed an instrument purporting to assign to herself "all the right, title and interest of the Estate of Joseph R. Snyder in and to the [Liquidating Trust] and all other assets remaining in the name of the said estate ... as sole beneficiary under the [Will]" (the "Assignment"). Affidavit of Judith Snyder sworn to on May 10, 1990 ("Snyder Aff."), Exhibit "4". Plaintiff sues individually, and derivatively on behalf of Finishing, the Trust and all shareholders of Finishing and owners of beneficial interest in the Trust, to recover such $120,000 payment.

## Discussion[1]

Defendants contend that plaintiff has no standing to maintain this action in her individual capacity and argue that title to the unit of beneficial interest of the Trust belonging to the Estate of Joseph R. Snyder (the "Unit of Beneficial Interest") remains property of the Estate. According to defendants, in order for plaintiff properly to maintain this action at all, she must sue in her capacity as Executor. Defendants contend that as Executor, plaintiff should be deemed a citizen of New York rather than Florida, thereby destroying this Court's diversity jurisdiction.

Plaintiff relies on the Assignment to establish her entitlement to bring this derivative action in her individual capacity as a resident of the State of Florida, contending that as a result of the Assignment, she acquired all right, title and interest in and to the Unit of Beneficial Interest.

### Diversity of Citizenship

In 1988, Section 1332 of Title 28 was amended to eliminate confusion as to

---

**1.** Though the first branch of defendants' motion addresses reassignment of the case to the White Plains Division of this Court, the Court will address the subject matter jurisdiction issue first since absent jurisdiction it would be inappropriate for this Court to enter orders. *Dinger v. Gulino,* 661 F.Supp. 438 (E.D.N.Y.1987).

whose citizenship controlled in cases involving personal representatives. Section 1332 now provides:

> the legal representative of the estate of a decedent shall be deemed to be a citizen only of the same state as the decedent, and the legal representative of an infant or an incompetent shall be deemed to be a citizen only of the same state as the infant or incompetent.

28 U.S.C. § 1332(c)(2) (1988). Thus the effectiveness of the Assignment is indeed in issue. If the Assignment is effective to vest in plaintiff all right, title and interest in and to the Unit of Beneficial Interest, plaintiff establishes diversity of citizenship since she would be entitled to prosecute this action in her individual capacity as a citizen of the State of Florida, the affairs of the Estate and her obligations as Executor having been discharged. If the Assignment is ineffective to vest such right, title and interest in plaintiff, plaintiff retains only a beneficial interest in the Estate (under the Will's art. THIRD) and her obligations as Executor endure. There appears to be no dispute that decedent was a resident of the State of New York at the time of his death. Plaintiff, as Executor,[2] would be deemed a citizen of the State of New York for jurisdictional purposes under Section 1332(c). The Court must therefore determine the effectiveness of the Assignment in order to address defendants' jurisdictional challenge.

■ Though defendants dispute the fact of the assignment, the Court will resolve this and other disputed issues of fact in plaintiff's favor for purposes of this motion to dismiss. The Court therefore assumes the instrument evidencing the assignment to have been executed as indicated on its face. The effect and impact of the Assignment as it relates to the question of subject matter jurisdiction, however, is a question of law for the Court. Though the parties draw various conclusions from the fact of the Assignment, neither party draws upon the best authority for determining the effectiveness of the Assignment, the Will itself.

The Will provides, in relevant part:

*FIRST:* (A) I give to my children, SHELDON SNYDER and ROBERT SNYDER, all my jewelry, clothing and articles of personal adornment to be divided amicably between them as they might agree....

(B) I give to my wife, JUDY SNYDER (hereinafter referred to as "my wife"), if she survives me, all my tangible personal property not disposed of under paragraph "(A)" of this Article, together with all insurance policies thereon, if any....

*SECOND:* I give to my wife, if she survives me, an amount equal to the lesser of:

(A) the maximum marital deduction allowable in the federal estate tax proceeding relating to my estate, reduced by the total of all amounts allowed as a marital deduction in said proceeding with respect to property which passes or has passed to my wife under other provisions of this Will or apart from this Will, or

(B) the maximum effective marital deduction ...

*THIRD:* The balance of my estate, whether real or personal, and wherever situate (referred to as my "residuary estate"), I give to my Trustees, who shall hold the same in a separate trust for the rest of my wife's life as follows:

(A) My Trustees shall pay to my wife, or apply for her benefit, the entire net income in quarter annual or more frequent installments as may be convenient to my Trustees.

(B) In addition, my Trustees may at any time or from time to time pay to my wife, or apply for her benefit, so much or all of the principal of this trust as my Trustees, in their sole discretion, shall deem advisable for her support, maintenance and health, and to enable her to maintain her accustomed standard of living, even though any such distribution of principal may terminate this trust....

---

**2.** Under New York's Estates, Powers and Trusts Law, "[a]ctions or proceedings brought by or against a personal representative must be brought by or against him in his representative capacity." E.P.T.L. § 11–4.1 (McKinney's 1967).

*SEVENTH:* (A) I appoint my wife, JUDY SNYDER, as Executor of this Will....

(B) I appoint my wife, JUDY SNYDER, and my son, SHELDON SNYDER, as Trustees under this Will....

These provisions, as well as article NINTH of the Will governing residual powers of fiduciaries appointed under the Will, as read in the context of the entire instrument, *see In re Bellows,* 103 A.D.2d 594, 480 N.Y.S.2d 925 (2d Dept.1984), *aff'd,* 65 N.Y.2d 906, 493 N.Y.S.2d 455, 483 N.E.2d 130 (1985), indicate that the Will fails to establish plaintiff's authority to effectuate the Assignment. Contrary to plaintiff's statement that "in accordance with the provisions of my husband's Will, I distributed the remaining assets of the Estate to myself," Snyder Aff. at ¶ 3, no provision of the Will grants the Executor, Trustees or other person, the authority for such a distribution.[3]

Article THIRD of the Will expressly vitiates the vesting of any such authority in the Executor by clearly and unambiguously providing that the legal interest in and to the residuary estate, inclusive of the Unit of Beneficial Interest, shall be held by the Trustees in trust for the duration of plaintiff's life. Furthermore, article THIRD expressly anticipates the potential desire or necessity to terminate the trust during plaintiff's lifetime, but provides for termination only through a potential "distribution of principal." Will art. THIRD. Absent from article THIRD is evidence of the testator's intent to permit the trust's termination through assignment to the plaintiff of title to the corpus, the precise object and effect of the Assignment here.

Nor does any other provision of the Will indicate such an intent. Although the Will's article NINTH authorizes the Execu-

tors and Trustees "in their sole discretion, to sell, exchange, offer for redemption or otherwise dispose of the shares or interest in the Entity owned by my Estate or the trust held under this Will," construction of this language so as to permit assignment of the Unit of Beneficial Interest to plaintiff would directly contradict the express direction of article THIRD that the trust continue for the entirety of plaintiff's life. Since testamentary intent is best found in the language of the Will itself, where that language is clear, unambiguous and consistent with the Will's overall structure, the Court will not interpret the Will so as to rewrite its provisions. *See In re Smith's Estate,* 90 A.D.2d 905, 456 N.Y.S.2d 870 (3d Dept.1982), *aff'd,* 60 N.Y.2d 864, 470 N.Y.S.2d 359, 458 N.E.2d 818 (1983).

Assuming *arguendo,* however, that authority to effect the Assignment was vested in the Executors and Trustees pursuant to the language of article NINTH quoted above, or any other provision of the Will, the Will indicates that a disposition of shares held in trust as provided for under article THIRD shall be effectuated by *each* of the existing Executors and Trustees. Article SEVENTH provides, in relevant part:

(E) All references in this Will to my "Executors" and "Trustees", and the pronouns and verbs corresponding thereto, shall be deemed to include all Successors, and shall be deemed to refer to each Executor and Trustee serving hereunder at any time, and shall be construed in the masculine or feminine and in the singular or plural, whichever construction is consistent with the facts prevailing at any given time.

In conjunction with the reference in the plural in article NINTH to the authority of *"fiduciaries ...* to sell, exchange, offer for

---

**3.** Plaintiff correctly argues that "[t]he transfer of the estate's unit of beneficial interest in the Liquidating Trust to plaintiff in her individual capacity is expressly permitted by the Liquidating Trust Agreement." Vogel Aff. sworn to May 11, 1990 at ¶ 14. The Liquidating Trust Agreement therefore creates no impediment to a devise of a unit of beneficial interest in the Trust. Neither the Will nor any other instrument, however, effectuates, or establishes plaintiff's au-

thority to effectuate, such a transfer. Although Article EIGHTH of the Will expressly confers upon the Executors and Trustees the powers and discretion generally conferred upon personal representatives under the Florida Probate Code and Chapter 737 of the Florida Statutes entitled "Trust Administration" by incorporating these statutes by reference, the Court finds these statutes to confer no power upon the Trustees sufficient to accomplish the Assignment.

redemption or otherwise dispose of shares ..." (Emphasis added), this language confirms the testator's intent to have the existing fiduciaries execute their duties jointly. Execution of the Assignment solely by plaintiff absent Sheldon Snyder, the other Trustee, is therefore ineffective to accomplish an assignment of the Unit of Beneficial Interest to plaintiff. The Unit of Beneficial Interest thus remains property of the Estate.

■ This action, having as its subject matter an asset of the Estate, may therefore properly be brought only on behalf of the Estate by its Executor in her representative capacity. *See* E.P.T.L. § 11–4.1. Accordingly, under the mandate of 28 U.S.C. § 1332(c)(2), plaintiff, as representative of the Estate, is a citizen of New York for jurisdictional purposes and fails to establish the requisite diversity of citizenship among the parties.[4]

*Amount in Controversy*

Alternatively, the Court holds that plaintiff has failed to establish that this action is a shareholder derivative action conferring upon her the right to sue on behalf of Finishing for the entire $120,000 payment rather than for the Estate's one-third interest in such payment. The Court, perforce, rejects plaintiff's contention that she has satisfied the amount in controversy requirement of 28 U.S.C. § 1332(a).

■ New York Business Corporation Law ("B.C.L.") § 626 [5] provides, in relevant part:

(a) An action may be brought in the right of a domestic or foreign corporation to procure a judgment in its favor, by a holder of shares or of voting trust certificates of the corporation or of the beneficial interest in such shares or certificates.

(b) In any such action, it shall be made to appear that the plaintiff is such a holder at the time of bringing the action and that he was such a holder at the time of the transaction of which he complains, or that his shares or his interest therein devolved upon him by operation of law....

B.C.L. § 626 (McKinney's 1986). It is well-settled that under B.C.L. § 626, the plaintiff in a shareholder derivative action must not only have been a shareholder at the time of the transaction about which she complains but must maintain her shareholder status throughout the pendency of the action or the action will abate as a derivative suit. *Independent Investor Protection League v. Time, Inc.*, 50 N.Y.2d 259, 428 N.Y.S.2d 671, 406 N.E.2d 486 (1980); *Tenney v. Rosenthal*, 6 N.Y.2d 204, 189 N.Y.S.2d 158, 160 N.E.2d 463 (1959); *Karfunkel v. USLIFE Corp.*, 116 Misc.2d 841, 455 N.Y.S.2d 937 (N.Y.Sup.Ct.1982), *aff'd*, 98 A.D.2d 628, 469 N.Y.S.2d 1020 (1st Dept.1983). A corporation's dissolution or liquidation, without more, will not defeat a shareholder's right to prosecute an action on the corporation's behalf since, under B.C.L. § 1006, "the rights and remedies of the shareholders existing prior to dissolution are viewed as if the dissolution never occurred." *Independent Investor Protection League*, 50 N.Y.2d at 264, 428 N.Y.S.2d at 674, 406 N.E.2d at 489. Where a plaintiff, however, voluntarily disposes of her shares, her rights as a shareholder cease and her interest in the derivative action is terminated. *Tenney v. Rosenthal*, 6 N.Y.2d at 211, 189 N.Y.S.2d at 163, 160 N.E.2d at 466–67.

---

**4.** Although defendants overlook the applicability of 28 U.S.C. § 1332(c)(2) and base their argument on New York law, a similar result would likely obtain. *See Menefee v. Floyd and Beasley Trans. Co., Inc.*, 106 A.D.2d 556, 483 N.Y.S.2d 367 (2d Dept.1984), *appeal denied*, 134 A.D.2d 331, 520 N.Y.S.2d 807, *appeal denied*, 71 N.Y.2d 802, 527 N.Y.S.2d 768, 522 N.E.2d 1066 (1987) (citing *Farrell v. Piedmont Aviation*, 411 F.2d 812 (2d Cir.), *cert. denied*, 396 U.S. 840, 90 S.Ct. 103, 24 L.Ed.2d 91 (1969)) (residence of decedent rather than that of personal representative, is controlling as to whether a plaintiff estate is a resident of New York State).

**5.** In a case based on diversity jurisdiction, as is alleged here, state law governs who is a "shareholder" with a right to maintain a derivative action. *Galef v. Alexander*, 615 F.2d 51 (2d Cir.1980). Since plaintiff alleges rights belonging to Finishing, a New York corporation, the substantive law of the State of New York governs this determination. *Id.*

Under B.C.L. § 1006, plaintiff fails to meet the requirements for maintaining a shareholder derivative suit. Although plaintiff may have plausibly claimed a "double derivative interest" in Finishing through Textiles' ownership of one-half of Finishing's shares, *see generally,* 3B *Moore's Federal Practice* ¶ 23.1.17 (2d ed. 1987), the record indicates that as of the date of the Liquidating Trust and Transfer Agreements, neither Textiles nor Finishing continued in existence as anything other than empty shells, all equity interests having been merged into the Liquidating Trust as a consequence of, among other things, plaintiff's assent to the Transfer Agreement. In accordance with the Transfer Agreement, plaintiff voluntarily surrendered, and Textiles redeemed, the Estate's shares of Textiles more or less contemporaneously with the transaction about which plaintiff complains. Complaint at ¶¶ 13, 14; Transfer Agreement at ¶¶ 1, 3. In light of these facts, the Court doubts that the Estate was a shareholder of Finishing at the time of the alleged payment to Turetzky.

■ Even assuming, however, that the Estate retained a valid shareholder interest in Finishing notwithstanding Finishing's effective liquidation pursuant to the Liquidating Trust Agreement, the Estate's accession to a beneficial interest in the Trust, rather than permit plaintiff to trace her interest in Finishing's assets through to those of the Trust under a "double derivative" theory, unequivocally establishes plaintiff's knowing and voluntary surrender of the Estate's right to assert claims on behalf of Finishing in exchange for whatever bundle of rights are appurtenant to the Unit of Beneficial Interest. In essence, plaintiff's voluntary surrender of shares constitutes "something more" than the mere liquidation of Textiles and Finishing, without which plaintiff might otherwise re-

tain the right to maintain this derivative action. *See Independent Investor Protection League, supra.* Plaintiff's voluntary surrender of the Estate's shares of Textiles thus terminated the Estate's rights to sue derivatively on behalf of Finishing, such rights having been subsumed by the Estate's interest in the Liquidating Trust. Because the Liquidating Trust fails to qualify as a corporation under B.C.L. § 626 (or an unincorporated association within the meaning of Fed.R.Civ.P. 23.1 to the extent such Rule may be applicable in the absence of governing New York law) plaintiff accordingly lacks standing to maintain this action as a shareholder derivative suit.

Because plaintiff may not properly maintain this action derivatively, the Court rejects plaintiff's contention that it is Finishing's purported interest in recovering the full $120,000 payment that is determinative of the amount in controversy here. Plaintiff's reliance on *Koster v. Lumbermens Mut. Casualty. Co.,* 330 U.S. 518, 67 S.Ct. 828, 91 L.Ed. 1067 (1947), is thus misplaced. The record makes plain that the actual amount in controversy is $40,000, a one-third interest in the payment plaintiff seeks to recover, corresponding to the Estate's one-third interest in the Liquidating Trust. *See Skalski v. Skalski,* 259 F.Supp. 153 (E.D.Pa.1966). The allegations of the complaint therefore fail to establish an amount in controversy sufficient for this Court to sustain jurisdiction under 28 U.S.C. § 1332(a).

■ The Court rejects plaintiff's contention that amendment of the complaint to include a claim under New York Real Property Law ("R.P.L.") § 442–e(3), would cure this jurisdictional defect.[6] Generally, jurisdiction is not defeated unless "it is apparent to a legal certainty" that plaintiff cannot recover the amount demanded. *Beck-*

---

6. Real Property Law § 442–e provides, in relevant part:

Penalty recoverable by person aggrieved. In case the offender shall have received any sum of money as commission, compensation or profit by or in consequence of his violation of any provision of this article, he shall be liable to a penalty of not less than the amount of the sum of money received by him as such

commission, compensation of profit and not more than four times the sum so received by him as may be determined by the court, which penalty may be sued for and recovered by any person aggrieved and for his use and benefit, in any court of competent jurisdiction.

R.P.L. § 442–e(3) (McKinney's 1989).

*erman v. Sands,* 364 F.Supp. 1197, 1200 (S.D.N.Y.1973) (quoting *Bell v. Preferred Life Assurance Society,* 320 U.S. 238, 240, 64 S.Ct. 5, 6, 88 L.Ed. 15 (1943)). The use of punitive or exemplary damages to satisfy the amount in controversy requirement, however, triggers special judicial scrutiny. *See Zahn v. International Paper Co.,* 469 F.2d 1033, 1033 n. 1 (2d Cir.1972), *aff'd on other grounds,* 414 U.S. 291, 94 S.Ct. 505, 38 L.Ed.2d 511 (1973). Where a claim based upon the award of punitive damages is the exclusive basis for satisfying the amount in controversy requirement, the court must examine the claim to ascertain whether the law allows such damages. *Lieb v. American Motors Corp.,* 538 F.Supp. 127 (S.D.N.Y.1982).

█ A claim under the quadruple damage provision of R.P.L. § 442–e, the claim plaintiff seeks to add to the complaint, is patently penal in nature and discretionary with the Court. R.P.L. § 442–e(3); *Herbst v. Ritchey,* 220 A.D. 701, 221 N.Y.S. 349 (1st Dept.1927) (McAvoy, J., dissenting). "Being highly penal [the statute] must be strictly construed" (citations omitted). *Ruiz v. Mendez,* 86 F.Supp. 29, 37 (D.P.R. 1949) (construing R.P.L. § 442–e(3)). Since the provision's enactment in 1922, not a single reported decision has awarded a fine in an amount greater than that of the actual commission paid, and of the few cases under Section 442–e(3) which have permitted recovery of the commission paid, only one, *Goldman v. Rubenstein,* 124 Misc. 606, 209 N.Y.S. 155 (Kings Co.Sup.Ct.1925), *rev'd,* 214 A.D. 791, 210 N.Y.S. 854, *aff'd,* 242 N.Y. 517, 152 N.E. 408 (1926), attempts to formulate criteria for awarding as a penalty a multiple of the actual commission. Where there exists any reasonable doubt whether Section 442–e(3) applies in a particular case, "the party of whom the penalty is claimed shall have the benefit of the doubt." *Galbreath–Ruffin Corp. v. 40th and 3rd Corp.,* 25 A.D.2d 114, 267 N.Y.S.2d 520 (1st Dept.1966), *aff'd in part and modified in part,* 19 N.Y.2d 354, 280 N.Y.S.2d 126, 227 N.E.2d 30 (1967).

Relying upon a narrow construction of Section 442–e(3), New York courts have exhibited extreme reluctance to levy a penalty for broker misconduct greater than the actual commission paid and received, apparently never having done so. The Court finds neither in the pleadings nor in any of the parties' submissions, extraordinary circumstances which would warrant departure from this cautious approach. Specifically, the Court rejects plaintiff's contention that the circumstances of defendants' alleged breach of fiduciary duty establish conduct warranting imposition of a multiple penalty under Section 442–e(3). Accordingly, the Court finds that plaintiff would fail to recover a multiple of its portion of the actual commission allegedly paid to Turetzky even if plaintiff could establish the necessary elements of the Estate's substantive claim. Plaintiff's inability to meet the $50,000 amount in controversy requirement of 28 U.S.C. § 1332(a), is thus a "legal certainty." *See Zahn v. International Paper Co., supra.*

### Conclusion

For all the foregoing reasons, defendants' motion to dismiss for lack of subject matter jurisdiction is granted and the complaint dismissed with costs to defendant, plaintiff having failed to establish subject matter jurisdiction. Plaintiff's motions to amend the complaint and for disqualification of counsel are denied as moot.

SO ORDERED.