OPINION OF THE COURT
Colleen D. Duffy, J.
Plaintiff commenced this action against defendants seeking actual and punitive damages against defendants Miriam Development and Yezol, Inc. for claims sounding in fraud, conversion and violation of section 442-e of the Real Property Law. (Defendant Cohen was dismissed from the action prior to the commencement of trial.)
At the conclusion of the evidence and witnesses by both parties, plaintiff moved for a directed verdict on the claims and requested that the only issue to be put to the jury is punitive damages. With respect to the claims for fraud and conversion, *549 the court denied plaintiff’s motion. For the reasons set forth below, the court grants plaintiffs motion for a directed verdict against defendants Miriam Development and Yezol, Inc. for violation of section 442 of the Real Property Law. In addition, pursuant to section 442-e (3), for the reasons set forth below, the court finds that plaintiff is entitled to damages equal to quadruple the amount of the broker’s commission.
Stipulated and Undisputed Facts
The following facts were stipulated to and/or undisputed at trial:
(1) A broker’s fee in the amount of $7,200 was to be paid by plaintiff at the closing at issue in this action.
(2) The $7,200 check made out to Miriam Development was to be the broker’s fee.
(3) At the time of the events in question, Miriam Home Sales, Inc. had not filed with the Secretary of State of New York a certificate setting forth Miriam Development as a name under which it was doing business.
(4) At the time of the events in question, Miriam Development did not have a real estate broker’s license issued in its name in the State of New York.
(5) At the time of the events in question, Yezol, Inc. was not a licensed real estate broker in the State of New York.
(6) lian Cohen appeared at the real estate closing at issue in this action on behalf of Miriam Development and Yezol, Inc. in this action.
(7) Mr. Cohen took possession of the check for $7,200 from the purchasers at the closing knowing that it was a broker’s fee.
(8) Yezol, Inc. deposited the $7,200 check into a bank account under its name.
(9) Yezol, Inc. was the purchaser of the real property at issue in this action.
Conclusions of Law
Article 12-A, §§ 440, 440-a, 441, 442 et seq. of the Real Property Law set forth the specifications and requirements pursuant to which real estate brokers and real estate salesmen must adhere in order to conduct business, to wit, list for sale, sell, exchange, buy or rent, or offer or attempt to negotiate a sale, exchange, purchase or rental of an estate or interest in real estate, and collect fees in undertaking such business.
Pursuant to those sections of Real Property Law article 12-A, no person may receive a commission arising out of the sale of *550 real estate unless that person has a real estate license in accordance with the provisions of article 12. (See Real Property Law art 12-A, §§ 440, 440-a, 441, 442 et seq.). Section 442-e (3) of the Real Property Law provides that unlicensed brokers who have received funds in violation of the provisions of article 12-A may be liable for not less than the amount received by them and not more than quadruple the amount.
Here, lian Cohen, who appeared at the closing on behalf of both Miriam Development and Yezol, Inc., accepted the $7,200 check knowing it to be a broker’s fee, and turned it over to Yezol, Inc. to be deposited into Yezol’s account.
Based upon these and all of the stipulated facts set forth above, the court finds that, as a matter of law, Miriam Development and Yezol, Inc. are liable for violating the above-referenced provisions of article 12-A of the Real Property Law and are jointly and severally liable for statutory damages pursuant to section 442-e of the Real Property Law.
Statutory Damages
With respect to the issue of damages, a claim under the quadruple damage provision of section 442-e of the Real Property Law is penal in nature and discretionary with the court. (Real Property Law § 442-e [3].) The court notes that the penalty of quadruple the amount of the unlawfully collected commission is a heavy penalty and must be strictly and narrowly construed. (2 Park Ave. Assoc. v Cross & Brown Co., 36 NY2d 286 [1975].) The court also notes that an award of quadruple damages under this statute is extremely rare and appropriate only in extraordinary circumstances. (Snyder v Pleasant Val. Finishing Co., Inc., 756 F Supp 725 [SD NY 1990]; see also Goldman v Rubinstein, 124 Misc 606 [Sup Ct, Kings County 1925], revd 214 App Div 791, affd 242 NY 517 [1926].)
Nonetheless, the court finds that, based upon the extraordinary facts of this case, quadruple damages are appropriate in this situation. Considering the facts as posited by the defendants, Mr. Cohen testified that he acted as a broker through Miriam Development for plaintiff in this action in arranging for the purchase of the property. He admitted, however, that he also represented the purchaser during the transaction.
Specifically, Mr. Cohen testified that, during the course of the transaction, once he had found a purchaser for the property (Yezol, Inc.) for plaintiff, he then proceeded to operate in the transaction on behalf of Yezol, Inc. He never informed *551 plaintiff that he, as secretary of Yezol, Inc. and brother to the president of Yezol, Inc., might have an interest, or a conflict of interest, with respect to negotiating the purchase price of the home in this transaction.
Indeed, Mr. Cohen admitted at trial that he had negotiated against the plaintiff’s interest by asking plaintiff, on behalf of the purchaser, to lower the agreed upon purchase price as a condition of closing. He testified that it was at his behest that the purchase price was reduced because he researched the nature of the house, vis-a vis its occupancy (single family versus multi-family use) and determined that its value was less than he previously had thought.
The court notes that one of the purposes of article 12-A and its sections is to ensure that real estate brokers uphold the relation of trust and confidence with their clients imposed upon them by the nature of their profession. (See Bersani v Basset, 184 AD2d 996 [4th Dept 1992] [licensing requirement for real estate brokers is intended to protect public from inept, inexperienced or dishonest persons].) With respect to licensed real estate brokers, the New York State Department of State has the power to suspend and/or revoke licenses as well as impose penalties. (Real Property Law § 442-c.)
Notably, behavior comparable to the defendants here by defendants in other actions has resulted in penalties far more serious than quadruple damages. In Matter of Goldstein v Department of State, Div. of Licensing Servs. (144 AD2d 463 [2d Dept 1988]), the New York State Department of State suspended a realtor’s license for six months with a continued suspension thereafter of the real estate broker’s license until restitution of unearned fees and secret profits was made. In that case, the brokers, without full and frank disclosure, had acted as agent for both the seller and purchaser. (144 AD2d 463 [2d Dept 1988]; see also Matter of Donati v Shaffer, 187 AD2d 426 [2d Dept 1992], revd on other grounds 83 NY2d 828 [1994] [broker’s license suspended when broker failed to disclose that both parties to one transaction were represented by one attorney, and failed to disclose to his principles that he had an interest in the property]; C & R Ulrich Real Estate v Shaffer, 157 AD2d 646 [2d Dept 1990] [suspension of real estate broker’s license for breach of fiduciary duties].) In this case no such remedies are available as neither of the defendants is a licensed broker.
Here, defendants accepted money for a broker’s fee without *552 license to do so and under circumstances in which the defendants’ agent, Mr. Cohen, was acting on both sides of the transaction with no disclosure to plaintiff. Moreover, Mr. Cohen’s actions were detrimental to plaintiff as he — against their interest — negotiated a lower purchase price than what the parties originally had agreed to. The court finds that, under these extraordinary circumstances, the penal sanction of damages equal to quadruple the amount of the broker’s fee is more than appropriate and should deter these defendants and others from similar conduct in the future.