STANLEY ALBERT, Appellant, and M. BRUCE FINE, Proposed Intervenor-Plaintiff, Appellant, v. HAL A. SALZMAN et al., Respondents, et al., Defendants.

First Department, May 31, 1973.

*Donald N. Ruby* of counsel (*Robert M. Kornreich* with him on the brief; *Wolf, Popper, Ross, Wolf & Jones,* attorneys), for appellant and proposed intervenor-appellant.

*Henry P. Wasserstein* of counsel (*William R. Meagher* and *Michael H. Diamond* with him on the brief; *Skadden, Arps, Slate, Meagher & Flom,* attorneys), for Hyman I. Katz and others, respondents.

*Sheldon S. Lustigman* of counsel (*Bass & Ullman,* attorneys), for Hal A. Salzman, respondent.

STEUER, J. Taking, as we must for the purposes of this motion, the allegations of the complaint to be true, the following facts appear.

Odell, Inc. was a Delaware corporation engaged in marketing certain brand products. Papercraft Corporation is a corporation engaged in the manufacture of various paper products. Both are publicly owned companies. Following negotiations in the fall of 1969 the boards of directors of both companies informally approved an agreement of merger whereby the stockholders of Odell would receive .59375 of a share of Papercraft for each share of Odell. This proposed arrangement accorded roughly with the respective market prices of the stocks of the two companies, namely, Odell $16.50 per share and Papercraft $31 per share. However, on October 21, 1969, the Odell board of directors rejected this offer.

Following the rejection a series of private negotiations between Papercraft and various officers, directors and stockholders of Odell ensued. As a result of those negotiations the following transactions resulted. On November 25, 1969, defend-

ant Salzman, a director of Odell, sold his shares (45,406 common and 1,270 preferred) to Papercraft for $30 a share, an excess of $11.50 per share over the market price. For this Salzman agreed to and did resign as an officer and director of Odell, although his salary was to continue until December, 1970. He further agreed to use his best efforts to have Odell reduce the number of its directors from 12 to 9, to provide for an easier method of amending the by-laws, to bring about the resignation of 7 of the 12 directors, and to cause the election of nominees of Papercraft in their stead. Two days previously Papercraft had made an agreement with Laurence, a director of Odell who owned individually and with his wife 28% of the outstanding Odell stock (237,000 shares) to buy 85,000 shares. Laurence agreed to vote his remaining shares for a board of directors mutually agreeable to Papercraft and himself. In addition Laurence had the right, for six months, to " put " to Papercraft 70,000 shares of Odell, or, if it had been merged with Papercraft, the equivalent number of shares of Papercraft at $22.44 per share.

The substitution of directors did not, however, go smoothly, despite the co-operation of Salzman and Laurence. Thereupon Papercraft had further negotiations with the remaining directors. Papercraft agreed to buy the stock of director Wessenger (8,500 shares) for $30 a share, the sale to become effective when the new board was seated. The market price of Odell at that time was between $20.25 and $21.75 per share. Wessenger was also guaranteed against any loss of his pay on an employment agreement. He agreed to vote for Papercraft's nominees for the board. At the time Wessenger's Odell stock was transferred to Papercraft, its market price was about $4.50 per share. Arrangements were made with director Marcus to lift restrictions on the 10,000 Odell shares he owned, which required him to offer the stock to Odell at 12½ cents a share. Marcus was also promised the presidency of Odell. Director Schur was given a two-year extension of his employment contract and a substantial salary increase. Directors Eisenberg and Wishingrad received beneficial, but less favorable, contract changes.

Thereupon a new board took office and immediately approved a merger offer by which Odell stockholders would receive one share of Papercraft for each four shares of Odell.

The above are the allegations of the first cause of action. The second is not under separate attack.

The third cause of action alleges that between the date of the election of the new board and the effective date of the merger the board adopted new and improper accounting practices which

made it appear that Odell's financial position was greatly inferior to what it had been. This practice, together with the added expense of the employment contracts referred to above, is alleged to have depressed the price of Odell stock, with the result that the merger offer was made to appear beneficial to Odell stockholders.

The fourth cause of action alleges that Salzman, Laurence and Wessenger were aware of the fact that Odell was in serious financial difficulties due to several facts set out and that they concealed this knowledge, enabling them to make the sales of their stock referred to.

Upon this motion by Salzman, two of the new directors and Papercraft to dismiss the complaint, it appears that the plaintiff Albert, a former stockholder of Odell, sold his stock after this suit was initiated. It is conceded that he can no longer maintain the action. However, another stockholder of Odell, Fine, has sought to intervene in the action, and it is his application that provides the meat of the appeal. Special Term denied the application, and with the disqualification of Albert dismissal was inevitable.

Three grounds for denying the intervenor's motion are urged. The first, considering the experience of counsel urging it, must be regarded as a tongue-in-cheek makeweight designed to trap the unwary. It is that the original action having been dismissed, there is no viable action in which to make the application. An equally simplistic answer would be that if the court considered the intervenor's application to intervene before it took up the defendant's application to dismiss, both being presented simultaneously, there would be a pending action in which intervention was permissible. But, adopting an adult approach, it will be seen that in no reported decision has a valid derivative or representative action been doomed to fail for this reason, and the decisions are unanimous that intervention for the purpose of survival, if seasonably sought, is invariably granted (*Matter of Eberlin,* 18 A D 2d 1068; *Mann* v. *Compania Petrolera Trans-Cuba,* 17 A D 2d 193; *Matter of Petroleum Research Fund,* 3 A D 2d 1). In the very situation presented here, namely, disqualification of the original plaintiff by disposal of his stock, intervention was allowed (*Pikor* v. *Cinerama Prods. Corp.,* 25 F. R. D. 92; *Winkelman* v. *General Motors Corp.,* 44 F. Supp. 960). Even if the original plaintiff was never qualified to bring the action, intervention has been allowed (cf. *Pikor, supra*).

The second, and really serious, ground is that the first, third and fourth causes of action do not state a cause of action. The

gravamen of this contention is that the causes of action belong to Odell, a stockholder of Odell having derivative rights only, and Odell being now merged into Papercraft prosecution of the action would amount to Papercraft suing itself. In other words, by so classifying the actions, the individual defendants, despite the alleged blatant betrayal of their trust, would walk away secure in the retention of their illegal profits, and equity should regard the transactions with philosophical equanimity. If the Chancellor's stomach is sufficiently strong he need not concern himself with his conscience. We fail to see it that way.

A merged corporation does not by merger lose a cause of action which it had prior to the merger (Business Corporation Law, § 906, subd. [b], par. [3]).* Consequently a derivative action on its behalf survives merger (*Marco* v. *Sachs,* 201 Misc. 934, affd. 279 App. Div. 1085, affd. 304 N. Y. 912). So far as the individual defendants are concerned, whether the action be regarded as derivative or representative there is no difficulty. Concededly if the action is representative no obstacle to suit is presented.

As regards Papercraft, the situation is different. The relief demanded against this defendant is the setting aside of the merger and an accounting for any gain Papercraft received. The gain referred to is the acquisition of the Odell stock, other than that acquired from the individual defendants at less than its fair price. The latter relief is not available, as its equivalent has been provided for by the right of refusal and having the stock appraised (*Greene & Co.* v. *Schenley Ind.,* 281 A. 2d 30 [Del., 1971]).** As regards setting aside the merger, that would clearly be a right belonging to Odell and not its stockholders or any of them. The right to sue despite the merger does not extend to the corporation into which the other is merged (*Basch* v. *Talley Ind.,* 53 F. R. D. 9).

The third cause of action is plainly derivative and cannot survive.

All of the relief sought in the fourth cause of action is obtainable in the first. Moreover, it is difficult to see how Odell or its stockholders were damaged by the deception practiced on Papercraft by the defendants charged. At most this cause of action seeks to have the remaining stockholders of Odell participate in the benefits of the fraud practiced on Papercraft. While profits

---

* As Odell is a Delaware corporation, it should be noted that a virtually duplicate statute exists in Delaware (Delaware General Corporations Law, § 261).

** This right is governed by Delaware law.

gained from the use of special information belong either to the corporation or the other stockholders, it does not appear that this is such a situation. The facts alleged would base a cause of action in favor of Papercraft only.

The third reason urged for denying intervention is that the proposed intervenor had assented to the merger by exchanging his Odell stock for Papercraft stock. At most this would constitute a defense dependent for its validity on principles applicable to all waivers, namely, intention as affected by the surrounding circumstances. In any event, it would not preclude recovery against the individuals on the first cause of action for the reasons already stated.

The decision of Special Term should be modified, on the law, to allow intervention of the intervenor Fine and to allow the action to continue against the individual defendants on the first cause of action, and the order should otherwise be affirmed, without costs.

NUNEZ, J. P., KUPFERMAN, STEUER and CAPOZZOLI, JJ., concur.

Order, Supreme Court, New York County, entered on September 6, 1972, unanimously modified, on the law, to grant the cross motion and allow intervention of the intervenor Fine and to allow the action to continue against the individual defendants on the first cause of action, and the order is otherwise affirmed, without costs and without disbursements.