**Harry LEWIS, Plaintiff-Appellant,**

v.

**Earle A. CHILES, Howard Burnett, Virgil Campbell, Earl M. Chiles, Cyril K. Green, et al., Defendants-Appellees.**

No. 82–3486.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted July 6, 1983.

Decided Nov. 4, 1983.

Irving Bizar, Pincus, Munzer, Bizar & D'Alessandro, New York City, Bruce M. Hall, Portland, Or., for plaintiff-appellant.

James N. Westwood, Miller, Nash, Yerke, Wiener & Hager, Barbee B. Lyon, Tonkon, Torp, Marmaduke & Booth, Robert L. Allen, Morrison, Dunn, Carney, Allen & Tongue, James H. Clarke, Spears, Lubersky, Campbell & Bledsoe, Henry Kantor, Phil Goldsmith, John D. Ryan, Portland, Or., for defendants-appellees.

Before SNEED, FARRIS and CANBY, Circuit Judges.

FARRIS, Circuit Judge:

Harry Lewis, a citizen of New York and a stockholder in Fred Meyer, Inc., an Oregon corporation, filed this shareholder derivative action on June 18, 1980. Federal jurisdiction was based on diversity of citizenship. 28 U.S.C. § 1332. During the pendency of the action the shareholders of Fred Meyer, Inc., approved the sale of the corporation's assets to two companies for a price of fifty-five dollars per share. The business was sold as a going concern, and the derivative claim was specifically included in the assets sold. The defendants moved for summary judgment on the ground that Lewis no longer had standing to prosecute the suit. The district court granted their motions on June 8, 1982. The court subsequently denied Lewis's request for attorneys' and accountants' fees. We affirm.

## FACTS

Lewis's primary allegations were that unauthorized bonuses had been paid to the corporation's senior officers; that, in order to decrease his personal income tax liability, Fred G. Meyer appropriated a corporate opportunity by purchasing a building which he later leased to Fred Meyer Savings and Loan Association, a subsidiary of Fred Meyer, Inc.; and that the corporation, without independent appraisal, bought Fred G. Meyer's interests in real estate companies from the Meyer Estate at a vastly inflated price for the benefit of the Estate and the Meyer family. Lewis contends that these three violations of the shareholders' trust resulted in an injury to the corporation of approximately ten million dollars. His claims withstood a motion for summary judgment in December 1980.

During the discovery stage of the lawsuit, the sale transaction moved forward. In September 1980 the Board of Directors of Fred Meyer, Inc. received a letter from KKR Associates expressing interest in acquiring all of the outstanding stock of Fred Meyer, Inc. at a price of forty-five dollars per share. The KKR plan called for participation by Fred Meyer, Inc. management in the ownership of the new entity. The Di-

rectors turned down the proposal. On June 3, 1981, the corporation announced that it had received an unsolicited offer from KKR at fifty-five dollars per share. Later that month the Board established a special committee of outside directors to evaluate the offer and report its recommendations. The special committee voted on July 21 to recommend that the Board authorize representatives of the corporation to enter into negotiations with KKR. The following day the full Board voted to authorize the negotiations recommended by the special committee. In its final form the transaction involved the sale of all corporate assets to two entities organized by KKR, Fred Meyer, Inc. Acquisition Corp. and Fred Meyer Real Estate Properties, Ltd. Nine executive officers of Fred Meyer, Inc., five of whom were also directors, subscribed to 265,000 shares of Acquisition Corp. common stock, roughly three percent of the shares to be issued, at six dollars per share. They also had an option to purchase additional shares at the same price. The same officers and directors also purchased limited and general partnership interests in Fred Meyer Real Estate Properties, Ltd. The transaction was structured so that Acquisition Corp. would purchase the operating business of Fred Meyer, Inc. and Fred Meyer Real Estate Properties, Ltd. would purchase real estate, leaseholds, leasehold improvements, and certain other fixed assets. The purchase agreement provided that the nine executive officers would be retained by Acquisition Corp. on roughly the same terms as they had previously enjoyed. Acquisition Corp. further agreed to indemnify the officers and directors of Fred Meyer, Inc. for defense costs and any liability incurred as a result of derivative litigation.

On August 25, 1981, the Board of Directors, upon the recommendation of the special committee, unanimously approved the sale agreement. In November 1981 Kidder Peabody & Co., the Board's principal financial advisor, determined that the fifty-five dollar per share price was fair to Fred Meyer, Inc.'s common stockholders. The Board obtained a similar opinion from Mer-

rill Lynch White Weld Capital Markets Group. The Board then proceeded to issue to all Fred Meyer, Inc. shareholders a proxy statement and notice of a special meeting at which the proposed agreement would be presented. The proxy statement explained that the Lewis litigation was in the discovery stage and that if the transaction were consummated, the present shareholders would not benefit from any recovery. The proxy statement also apprised shareholders of actual or potential conflicts of interest involving the nine officers who were going to take part in the transaction. A majority of the shareholders voted for the sale at the special meeting on December 10, 1981.

## ANALYSIS

■ 1. *Standing.* The district court ruled that state law governed the question of Lewis's standing to bring a derivative action following the sale of the assets. Federal courts have divided on this question. *Compare Kenrich Corp. v. Miller,* 377 F.2d 312, 314 (3d Cir.1967), *and Susman v. Lincoln American Corp.,* 550 F.Supp. 442, 445–46 (N.D.Ill.1982) *with Lewis v. Knutson,* 699 F.2d 230, 236–38 (5th Cir.1983). Fed.R.Civ.P. 23.1 requires that a derivative plaintiff be a shareholder at the time of the alleged wrongful acts and that the plaintiff retain ownership of the stock for the duration of the lawsuit. This latter requirement, although not expressly stated in the rule, has been inferred from its language.[1]

However, as a practical matter, the continuous ownership requirement stems from the equitable nature of derivative litigation which allows a shareholder "to step into the corporation's shoes and to seek in its right the restitution he could not demand in his own." *Cohen v. Beneficial Loan Corp.,* 337 U.S. 541, 548, 69 S.Ct. 1221, 1226, 93 L.Ed. 1528 (1949). This equitable principle reflects a shareholder's real interest in obtaining a recovery for the corporation which increases the value of his holdings. *Lewis v. Knutson,* 699 F.2d at 238; *Schilling v. Belcher,* 582 F.2d 995, 1002 (5th Cir.1978). Since Lewis received cash for his shares in Fred Meyer, Inc. instead of shares in the acquiring companies, he could not benefit from any recovery.[2] His derivative suit was an intangible asset of Fred Meyer, Inc. which passed to the acquiring companies with the sale of Fred Meyer, Inc.'s other assets. After the sale only Acquisition Corp., Fred Meyer Real Estate Properties, Ltd., and their respective shareholders and partners, could have had an interest in pursuing the claims. *See Bosse v. Crowell Collier & Macmillan,* 565 F.2d 602, 613 (9th Cir.1977).

■ The district court looked to the substantive law of Oregon, the state of Fred Meyer Inc.'s incorporation, to resolve the standing issue. O.R.S. 57.630(1) provides that any existing claim survives the dissolution of a corporation.[3] While the court

1. The requirement that a shareholder must own stock at the time suit is filed derives from the first sentence of Rule 23.1, which refers to actions "brought by one or more shareholders to enforce a right of a corporation...." *See* C. Wright & A. Miller, 7A Federal Practice and Procedure § 1826 at 325 (1972); *Schilling v. Belcher,* 582 F.2d 995, 999 (5th Cir.1978). The rule's provision that a "derivative action may not be maintained if it appears that the plaintiff does not fairly and adequately represent the interests of the shareholders ... similarly situated in enforcing the right of the corporation ..." has served as an anchor for the concept that ownership must extend throughout the life of the litigation. *See Portnoy v. Kawecki Berylco Industries, Inc.,* 607 F.2d 765, 767 (7th Cir.1979); *Issen v. GSC Enterprises, Inc.,* 538 F.Supp. 745, 752 (N.D.Ill.1982).

2. This case is distinguishable from those in which courts have permitted shareholders who participated in mergers involving an exchange of shares to continue derivative actions against fiduciaries of the acquired corporation on behalf of the acquiring corporation. *See Niesz v. Gorsuch,* 295 F.2d 909, 913–14 (9th Cir.1961); *Platt Corp. v. Platt,* 21 A.D.2d 116, 249 N.Y. S.2d 75 (App.Div.1964), *aff'd* 15 N.Y.2d 705, 256 N.Y.S.2d 335, 204 N.E.2d 495 (1965); *Holmes v. Camp,* 186 A.D. 675, 175 N.Y.S. 349 (App.Div.), *aff'd,* 227 N.Y. 635, 126 N.E. 910 (1919). A derivative action by a shareholder in an Oregon corporation would be preserved in such a situation under O.R.S. 57.480(e).

3. O.R.S. 57.630(1) states in relevant part:
   The dissolution of a corporation shall not take away or impair any remedy available to

ruled that this statute allows a derivative claim to continue, it found that the statutory language offered no guidance as to who has standing to assert the claim.[4] We accord substantial deference to a district court's interpretation of the law of the state in which it sits. *Fleury v. Harper & Row Publishers, Inc.,* 698 F.2d 1022, 1026 (9th Cir.1982). No Oregon court has yet interpreted this provision as it relates to shareholder standing. The district court therefore applied general principles and held that Lewis lacked standing. This interpretation of how an Oregon court would decide the question is not clearly erroneous. *See id.* Since it does not conflict with the federal policy, we need not decide whether federal or state law controls.

■ Lewis asserts that the officers and directors of Fred Meyer, Inc. took advantage of the sale of the corporation's assets as a means of insulating themselves from liability in his suit. *See Watson v. Button,* 235 F.2d 235 (9th Cir.1956). He contends further that the alleged wrongdoers deprived the shareholders of the value of the derivative claims by transferring his cause of action for no consideration. Lewis thus seeks to analogize his case to those in which courts have invoked their equitable powers to allow shareholders to maintain derivative actions after the dissolution of a corporation when officers or directors breached their fiduciary duty in connection with a takeover. *See Independent Investor Protective League v. Time, Inc.,* 50 N.Y.2d 259, 406 N.E.2d 486, 428 N.Y.S.2d 671 (1980); *Albert v. Salzman,* 41 A.D.2d 501, 344 N.Y. S.2d 457 (App.Div.1973). We have thoroughly reviewed the record. We reject the argument. The proxy statement informed the shareholders that those officers and members of the Board of Directors who were defendants in Lewis's suit may have had conflicting interests. It also indicated that current shareholders would not benefit from any recovery if they approved the transaction. Further, George R. Roberts, a general partner in KKR, stated in an affidavit that Acquisition Corp. and Fred Meyer Real Estate Properties, Ltd., believed Lewis's derivative claims had no value. The shareholders were fully aware of the fact that it might have been expedient for the defendants to include the Lewis suit in the transfer of assets. They nevertheless opted to sell the corporation for 435 million dollars.

■ Lewis claims that the district court's failure to consider his request for class certification once it had ruled that he could no longer sue derivatively was error. In both derivative suits and class actions the named plaintiff sues in a representative capacity. The difference lies in the nature of the right sought to be enforced. A class action is not brought on behalf of the corporation but rather to assert primary individual rights of each member of the shareholder class against the corporation or third parties. 3B J. Moore & J. Kennedy, Moore's Federal Practice ¶ 23.1.16[1] at 23.-

---

or against such corporation, its directors, officers or shareholders, for any right or claim existing, or any liability incurred, prior to such dissolution, if action or other proceeding thereon is commenced within five years after the date of issuance of a certificate of dissolution or filing of a decree of dissolution.

4. Suit by a corporation which acquires a derivative cause of action as one of the assets of a purchased corporation would violate the contemporaneous ownership requirement of Fed.R. Civ.P. 23.1(1). The same would also be true of a shareholders' suit to compel the purchasing corporation to enforce its rights. The Supreme Court has never resolved the issue whether Rule 23.1(1) acts as a bar in a diversity case where state law permits a noncontemporaneous shareholder to maintain a derivative action.

*Bangor Punta Operations, Inc. v. Bangor & Aroostook Railroad Co.,* 417 U.S. 703, 708 n. 4, 94 S.Ct. 2578, 2582 n. 4, 41 L.Ed.2d 418 (1974). The Court's decision in *Hannah v. Plumer,* 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965), indicates that Congress has the power to fashion rules of procedure which affect the manner in which state-created rights are enforced in federal courts. However, if Rule 23.1 would close the doors of the federal courts to suits by noncontemporaneous shareholders, the purchasing corporation or its shareholders could bring an action in state court to enforce the substantive right created by statutes such as O.R.S. 57.630(1). *See generally* C. Wright & A. Miller, 7A Federal Practice and Procedure § 1829 (1972) (applicability of contemporaneous ownership requirement in diversity cases).

1–42 (2d ed. 1982); *Phillips v. Tobin,* 548 F.2d 408, 409 n. 1 (2d Cir.1976); *Weiner v. Winters,* 50 F.R.D. 306, 309–10 (S.D.N.Y. 1970). Any decrease in the value of Fred Meyer, Inc. shares allegedly caused by the breaches of fiduciary duty of the corporation's officers and directors would not give rise to a direct cause of action. *See Papilsky v. Berndt,* 466 F.2d 251, 255 (2d Cir.) *cert. denied,* 409 U.S. 1077, 93 S.Ct. 689, 34 L.Ed.2d 665 (1972); *Weiss v. Northwest Acceptance Corp.,* 274 Or. 343, 348, 546 P.2d 1065, 1069 (1976). Thus, even if class certification under Fed.R.Civ.P. 23 would otherwise have been appropriate, the substance of his claim prevented Lewis from maintaining his suit as a class action.

■ 2. *Attorneys' and accountants' fees.* Following the dismissal of Lewis's suit, the district court denied his motion for $450,000 in attorneys' and accountants' fees plus other expenses totaling $22,292.08. Since Lewis's cause of action derives from Oregon substantive law, Oregon legal principles control the award of fees. *See Lewis v. Anderson,* 692 F.2d 1267, 1270 (9th Cir. 1982); *Kabatoff v. Safeco Insurance Co.,* 627 F.2d 207, 210 (9th Cir.1980). Oregon follows the general rule that a litigant may recover fees in a derivative suit when there has been a gain or benefit to the corporation. *Krause v. Mason,* 272 Or. 351, 358–59, 537 P.2d 105, 108–09 (1975). A court may make such an award even when the benefit is non-pecuniary and there is no fund out of which to pay the fees. *Gilbert v. Hoisting & Portable Engineers Local 701,* 237 Or. 130, 137–38, 142, 384 P.2d 136, 139–40, 390 P.2d 320, 321, *cert. denied,* 376 U.S. 963, 84 S.Ct. 1125, 11 L.Ed.2d 981 (1964); *see Mills v. Electric Auto-Lite Co.,* 396 U.S. 375, 391–97, 90 S.Ct. 616, 625–28, 24 L.Ed.2d 593 (1970), *Ramey v. Cincinnati Enquirer, Inc.,* 508 F.2d 1188, 1194 (6th Cir.1974), *cert. denied,* 422 U.S. 1048, 95 S.Ct. 2666, 45 L.Ed.2d 700 (1975).

Lewis argues that where a derivative claim is assigned prior to the fruition of the lawsuit, there should be no requirement that a benefit be conferred, but only that the claim be meritorious. The Oregon courts have not ruled on the propriety of an award of fees in a derivative action in which the plaintiff has lost standing. However, in cases in which events have mooted derivative litigation, courts have insisted that a substantial benefit be conferred on a corporation as a result of the suit in order to justify an award. *See, e.g., Lewis v. Anderson,* 692 F.2d 1267 (although plaintiff ultimately moved to dismiss suit, derivative action caused corporation to submit disputed stock option grants to a vote of the shareholders); *Ramey v. Cincinnati Enquirer, Inc.,* 508 F.2d 1188 (derivative suit delayed consummation of a risky stock repurchase plan until an outside company bid for shares); *Kahan v. Rosenstiel,* 424 F.2d 161 (3d Cir.), *cert. denied,* 398 U.S. 950, 90 S.Ct. 1870, 26 L.Ed.2d 290 (1970) (derivative suit caused acquiring company to improve terms of its tender offer); *Chrysler Corp. v. Dann,* 43 Del. Ch. 252, 223 A.2d 384 (1966) (terms of agreement settling derivative action provided for changes in employee incentive compensation plan).

■ Under the American rule, plaintiffs generally cannot recover attorneys' and accountants' fees as an element of costs. The rationale for departing from the American rule in shareholder derivative actions is that it would be unfair to allow a group of stockholders to benefit indirectly from an individual's suit on behalf of a corporation without contributing to the expenses of the litigation. *Mills v. Electric Auto-Lite Co.,* 396 U.S. at 391–92, 90 S.Ct. at 625. Where a corporation's actions vitiating a derivative suit have a legitimate business purpose, there is no basis for requiring that the shareholders bear a proportion of a plaintiff's costs if the suit has not yielded a benefit to the corporation. Assumption of this burden would only decrease the value to the shareholders of measures presumably taken in their interest. Therefore, the district court properly undertook to determine whether Lewis's suit conferred any benefit on the corporation.

■ The district court reasoned that Fred Meyer, Inc. shareholders may have

benefitted from the lawsuit if, as an intangible asset, it made the acquisition of Fred Meyer, Inc. more attractive or convenient or increased the price of their shares. The court relied on the Roberts affidavit in which the affiant testified that Acquisition Corp. and Fred Meyer Real Estate Properties, Ltd. were not influenced in their decision to purchase Fred Meyer, Inc. as a result of Lewis's action, did not assign any value to the lawsuit, and did not consider it to have any value. Lewis contends that the buyers would not have purchased the cause of action along with Fred Meyer Inc.'s other assets unless it had value. However, the acquiring entities purchased a package of assets and they would not have acted unreasonably by assigning no particular value to the Lewis claims. The district court found that the chronology of events in the transaction, especially the fact that KKR first displayed an interest in purchasing the assets before Lewis initiated the lawsuit, lent credence to the Roberts affidavit. Its finding that the derivative suit conferred no benefit on the corporation was not clearly erroneous. *See Lewis v. Anderson,* 692 F.2d at 1269. The district court did not abuse its discretion by denying Lewis's motion for fees and expenses. *See id.*

AFFIRMED.

SNEED, Circuit Judge, concurring:

I concur in Judge Farris' opinion. I write separately to suggest that although the plaintiff had no standing to maintain a derivative suit, individually or on behalf of a class, he may not be, or have been, as the case may be, foreclosed from seeking recovery based upon a direct claim against the defendants.[1]

Pursuit of a derivative cause of action by a shareholder is possible only if the shareholder ownership requirement is satisfied throughout the duration of the suit. In this case, the plaintiff, having received the monetary value for his shares as the result of the transaction approved by a majority of the shareholders, does not satisfy that requirement. The plaintiff, therefore, has no standing to assert a derivative cause of action.

The plaintiff seeks to salvage his derivative action by requesting leave to amend his complaint under Fed.R.Civ.P. 15(a) to transform it into a class action. Although a motion for leave to amend the complaint is properly within the discretion of the district court, "the court may deny leave to amend where the proposed amendment fails to allege facts which would support a valid theory of liability." *Verhein v. South Bend Lathe, Inc.,* 598 F.2d 1061, 1063 (7th Cir. 1979). *Accord Pan-Islamic Trade Corp. v. Exxon Corp.,* 632 F.2d 539, 546 (5th Cir. 1980), *cert. denied,* 454 U.S. 927, 102 S.Ct. 427, 70 L.Ed.2d 236 (1981). That is the case here. *See Klamath-Lake Pharmaceutical Assoc. v. Klamath Medical Service Bureau,* 701 F.2d 1276, 1292–93 (9th Cir.1983); *Smith v. Commanding Officer, Air Force Accounting,* 555 F.2d 234, 235 (9th Cir.1977). The plaintiff's theory of recovery is that a "class action should be permitted to continue to prosecute the [derivative] claim herein for the benefit of those shareholders since they did not receive any consideration for the claims herein." Plaintiff's Opposing Affidavit, Feb. 18, 1982, at 10. Having no standing the plaintiff is not a proper representative plaintiff. A derivative theory of recovery, whether asserted individually or on behalf of a class, is governed by Fed.R. Civ.P. 23.1. *See* C. Wright, *Law of Federal Courts* 488 (4th ed. 1983). Thus, the district court properly denied the motion for leave to amend the complaint.

Our decision, however, does not preclude actions based upon direct theories of recovery. If such actions are precluded it is on other grounds. An action asserting a direct claim based upon common law or securities law principles might lie. If the plaintiff did not receive fair value for his shares in the asset sale and liquidation transaction, he should have pursued a direct cause of action

---

1. The plaintiff's ability to bring an action based upon a direct theory of recovery may be barred by limitations.

against the defendants. Under common law, majority shareholders owe a fiduciary duty to minority shareholders who are squeezed out in a transaction. *Passim* F. O'Neal, *Oppression of Minority Shareholders* (1975). And under federal law, false and misleading statements made in connection with any proxy solicitation are actionable under section 14 of the Securities Exchange Act of 1934, 15 U.S.C. § 78n (1976), *see* H. Henn & J. Alexander, *Laws of Corporations* § 297 (3d ed. 1983) (describing proxy regulation); while fraudulent schemes in connection with the sale or purchase of any security are actionable under section 10(b) and rule 10b–5, 15 U.S.C. § 78j(b) (1976). *See* H. Henn & J. Alexander, *supra,* § 298 (describing antifraud provisions).

A plaintiff who asserts such a claim may assert it individually or on behalf of a class, although a class action is usually preferable. *See* A. Bromberg & L. Lowenfels, *Securities Fraud & Commodities Fraud* § 4.7(120), at 84.4 (1981) ("Class actions ... may be the only practical way to attack squeezeouts and similar conflict transactions, especially if state derivative rights are extinguished by the transaction ....").

Subject to these observations, I concur in the opinion of Judge Farris.