5 F.3d 534
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 David ACKERMAN, et al., Plaintiffs-Appellees,
v.
Mario F. KASSAR, et al., Defendants-Appellees,
and
CAROLCO PICTURES, INC., et al., Nominal Defendants-Appellees,
v.
Morton RICHBERG, Intervenor-Appellant.
 No. 91-56521.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted June 8, 1993.
Decided Aug. 26, 1993.
 
 Before KOZINSKI, SILER* and KLEINFELD, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Richberg appeals the district court's approval of the proposed settlement of a shareholder derivative suit. We affirm.
 
 
 3
 I. Facts.
 
 
 4
 Carolco bought $45 million of its own stock from a company set up by its chief executive, Kassar. The Ackerman group of shareholders filed a derivative suit in California state court, claiming that the purchase was an improper attempt to benefit Kassar, at the expense of his company. The company and Kassar defended on the ground, inter alia, that a disinterested committee of the board of directors, excluding Kassar, had approved the sale, which would immunize the sale from challenge under Delaware law. See Levine v. Smith, 591 A.2d 194, 207, 210 (Del.1991). A California state judge in the derivative action applied California law, which was the law of the forum, instead of Delaware law, which was the law of the state of incorporation, and granted interlocutory relief to the shareholders.
 
 
 5
 The shareholders, corporation and Kassar then commenced negotiations before Magistrate Judge Harry McCue, a federal magistrate judge in the Southern District of California, in anticipation of possible federal litigation. After a year of negotiations, they agreed upon a settlement which would restore to the corporation all the money it had spent on the buyout. Most of the money would come from sale of the stock the corporation had bought from Kassar, and Kassar would guarantee the sale for the price the corporation had paid to him (about twice market), but if other buyers were found, Kassar would not have to disgorge the money. During the negotiations, Technicolor and RCS Video International Services ("RCS") bought a large block of the stock at the price Kassar had guaranteed, so he was saved that financial burden. In addition, the directors' errors and omissions insurer paid a substantial part of the settlement, saving Kassar additional money. At the end of the settlement process, the corporation was not out any money, Kassar had been able to keep part of what he had been paid, and Kassar was stuck with about $3 million worth of stock he had planned to sell back to the company.
 
 
 6
 When the negotiations regarding settlement were concluded, the Ackerman group of dissident shareholders filed a shareholders derivative action in the United States District Court for the Southern District of California. The case was immediately assigned to Magistrate Judge McCue, who had been supervising the settlement negotiations. The parties immediately filed notice of their settlement. The purpose of the lawsuit was not to litigate, because the case had already been settled between the parties. The real purpose was to get a federal approval for the settlement, and a judgment which would have res judicata effect. Magistrate Judge McCue ordered that notice of the settlement be given to all the other shareholders, in accord with Fed.R.Civ.P. 23(c), with thirty days to object.
 
 
 7
 Richberg filed extensive written objections, so Magistrate Judge McCue scheduled a hearing on them. Richberg did not appear for the hearing. The court proceeded to rule based upon the written submissions. In the alternative, the court determined that Richberg did not have standing, because he had not established that he owned stock at the requisite times, and that the objections were not well taken in substance. Richberg appeals.
 
 
 8
 II. Richberg's procedural objections.
 
 
 9
 Richberg claims a constitutional violation because the notice of the settlement only gave shareholders 24 days to file objections, and set the hearing in 31 days. Though the time was short, he has offered no citation of authority for the proposition that it was too short. He managed to file extensive and substantial objections on time, and offered no explanation for why he could not personally appear at the hearing. Richberg requested a continuance on the day before the scheduled hearing because he was seeking new counsel. He asked that his objections be considered based on the papers he had submitted if a continuance was not possible. This is precisely what the district court did.
 
 
 10
 III. Standing.
 
 
 11
 Richberg claims that the district court erred in denying his motion to intervene on the ground that he lacked standing. In this contention, we conclude that he was correct.
 
 
 12
 We review the legal determination of lack of standing de novo. United Union of Roofers, Waterproofers, and Allied Trades No. 40 v. Ins. Corp. of America, 919 F.2d 1398, 1399 (9th Cir.1990). The district court found that Richberg failed to satisfy the minimal standing requirements of Fed.R.Civ.P. 23.1 because he did not present any evidence to the court that he was an owner of Carolco stock. "Fed.R.Civ.P. 23.1 requires that a derivative plaintiff be a shareholder at the time of the alleged wrongful acts and that the plaintiff retain ownership of the stock for the duration of the lawsuit." Lewis v. Chiles, 719 F.2d 1044, 1047 (9th Cir.1983).
 
 
 13
 In his memorandum in support of his motion to intervene, Richberg asserts that he owned Carolco stock "during the pertinent period of the actions complained of in this case." This assertion of ownership is essentially identical to the allegation contained in the derivative suit plaintiffs' complaint. The court did not take evidence on standing, so no finding of fact was made.
 
 
 14
 The court erred in dismissing for lack of standing. Richberg's averment was substantially the same as the one made by the Ackerman shareholders in their complaint, and as an averment, sufficed. It was not evidence, but the court had given no notice that it would require evidence beyond the bare averment, and had accepted the bare averment from the Ackerman group. If there were no standing without evidence to prove stock ownership, then the judgment approving the settlement would be void for lack of jurisdiction, a conclusion we reject. If there was reason to doubt Richberg's standing, the court could have ordered him to produce evidence of the requisite stock ownership.
 
 
 15
 The Ackerman group attempts to distinguish their own position from Richberg's on the ground that they filed a verified complaint. This is not a sufficient basis for denying Richberg's motion to intervene. "Even if a federal rule or statute requires verification, a failure to comply does not render the document fatally defective." 5A Charles A. Wright and Arthur R. Miller, Federal Practice and Procedure, Sec. 1339, at 150 (1990). As a practical matter, Richberg's assertion was not substantially different from the Ackerman group's averment, because their complaint was verified only by counsel, not by anyone with personal knowledge.
 
 
 16
 IV. Opportunity for discovery.
 
 
 17
 Richberg claims that the district court abused its discretion by not extending the time for approval, and giving him an opportunity to do discovery and present evidence. He had an opportunity to present evidence against the settlement at the hearing which was held on November 22, 1991. He just did not take advantage of it. The court had discretion whether to give him more time to do discovery. We cannot conclude that the court abused its discretion.
 
 
 18
 V. Approval of the Settlement.
 
 
 19
 Since we conclude that the district court erred in denying Richberg's motion to intervene, we must reach its alternative conclusion, that even if Richberg was entitled to object, the settlement was appropriate and should be approved.
 
 
 20
 The gist of Richberg's objection to the settlement is that of $7 million still to be realized for the corporation under the settlement, $6.5 million would go to the Ackerman group's attorneys, and only $500,000 to the corporation. Magistrate Judge McCue considered this objection, but concluded that Richberg misunderstood the settlement. Richberg evidently was not counting the $34 million already realized as a result of the part of the settlement accomplished prior to the federal filing. This appears to have been correct. Had Mr. Richberg needed to amplify the points in his papers further, he should have appeared at the hearing and explained them. Although the notice was short, millions of dollars were at stake, and nothing in his papers demonstrates a reason why Mr. Richberg, with so much at stake, could not reasonably have made himself available for argument, responses to questions, and clarification of points, at the hearing.
 
 
 21
 Richberg claims that the reference to Magistrate Judge McCue should not have been made, but offers no authority for the proposition. In the particular circumstances of this case, we see no abuse of discretion in denying the motion to vacate the reference. Cf. Dixon v. Ylst, 990 F.2d 478 (9th Cir.1993).
 
 
 22
 The settlement was negotiated and largely effected before the parties came into federal court for approval, so $34 million had already been realized. The remaining money would go to the Ackerman group's lawyers because they were to get their money last, after the corporation, instead of first. Although Kassar would up without much of the financial burden of the settlement, the corporation obtained the benefit, because Technicolor and RCS had purchased a total of $34 million worth of stock. Considering the benefit to the corporation, the prudence of accepting Technicolor's and RCS's money when it became available, and the riskiness of the Ackerman group's lawsuit against Kassar in view of the Delaware rule insulating a corporate decision if made by a disinterested committee of the board, Magistrate Judge McCue did not abuse his discretion in approving the settlement.
 
 
 23
 Under Fed.R.Civ.P. 23(e), court approval of a class action settlement is required. The purpose of this approval is "to protect class members, including the named plaintiffs, whose rights may not have been given due regard by the negotiating parties." Ficalora v. Lockheed California Co., 751 F.2d 995, 996 (9th Cir.1985). In evaluating a class action settlement under Fed.R.Civ.P. 23(e), the appropriate test is whether the settlement is fundamentally fair, adequate and reasonable. Class Plaintiffs v. City of Seattle, 955 F.2d 1268, 1276 (9th Cir.), cert. denied, 113 S.Ct. 408 (1992). We reverse a district court's decision to approve a settlement proposal "only upon a strong showing that the district court's decision was a clear abuse of discretion." Id. (citation omitted).
 
 
 24
 Magistrate McCue spent considerable time with the parties during their settlement negotiations, and had a thorough understanding of the interests involved and the benefits of the settlement proposal. After careful consideration of the proposed settlement, Magistrate McCue found that it was fair and adequate to Carolco and its shareholders. A settlement hearing was held on November 22, 1991, but Richberg did not attend to voice his objections. His contentions were considered based on the papers he had submitted. Magistrate McCue adequately reviewed Richberg's objections, and properly determined they were without merit.[1] There was no clear abuse of discretion in his determination that the settlement was fair and adequate. Thus, we affirm.
 
 
 25
 AFFIRMED.
 
 
 
 *
 The Honorable Eugene E. Siler, United States Circuit Judge, United States Court of Appeals for the Sixth Circuit, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 For the reasons set forth in Magistrate Judge McCue's Findings of Fact and Conclusions of Law, we affirm the denial of Richberg's motions for leave to conduct discovery and continue hearing pending discovery, and to vacate reference to Magistrate Judge McCue