OPINION OF THE COURT
Herman Cahn, J.
Motion sequence numbers 001, 002 and 003 of action bearing index No. 120435/93 and motion sequence numbers 001, 002 and 003 of action bearing index No. 117218/93 are consolidated for disposition.
These two shareholder derivative actions are brought against the Grumman Corporation (Grumman) and certain of its current and former directors and officers. Briefly stated, the plaintiffs allege intentional and negligent breach of fiduciary duty by defendants resulting from their failure to prevent certain illegal conduct, including bribery and padded billing in the procurement of certain United States Government contracts. Plaintiffs assert that such activity has already resulted in substantial penalties to Grumman and the possible future loss of significant business.
The corporate and individual defendants have moved to dismiss the complaints pursuant to CPLR 3211 (a) (3) and (7) as well as Business Corporation Law § 626 based upon plaintiff’s failure to make a demand upon the Grumman board of directors before commencing suit.
At oral argument on the motions, the court was advised that the Northrop Corporation had offered to purchase all the stock of Grumman in order to accomplish a "cash-out” merger. The court then directed counsel to address the issue of what effect, if any, such a merger would have on plaintiff’s standing to maintain these actions.
The threshold issue is whether pursuant to New York law a derivative action can be maintained by a (former) shareholder, after a cash-out merger.
*283 Pursuant to the merger agreement with Grumman, the stock of every Grumman shareholder was to be acquired by Northrop for cash or converted into the right to receive a fixed sum in cash from the surviving corporation upon tender of Grumman stock to Northrop. Alternatively, any shareholder may participate in an appraisal proceeding pursuant to Business Corporation Law § 623.
Following completion of the tender offer Grumman will be merged into a wholly owned subsidiary of Northrop known as Northrop Acquisition, Inc. and the surviving corporation will itself be a wholly owned subsidiary of Northrop. The court believes that the merger has been consummated on the said terms.
Defendants maintain that the cash-out merger divests the plaintiffs, who are now former shareholders, of all rights (other than to collect the sum agreed upon for purchase of their stock), including standing to maintain a derivative action on behalf of Grumman or the surviving corporation. Plaintiffs maintain that a shareholder’s standing to assert a derivative claim subsequent to a cash-out merger survives, and is preserved by Business Corporation Law § 906 (b) (3).
Business Corporation Law § 626 in addressing shareholder status in derivative actions provides in relevant part:
"(a) An action may be brought in the right of a domestic * * * corporation to procure a judgment in its favor, by a holder of shares * * * of the corporation * * *
"(b) In any such action it shall be made to appear that the plaintiff is such a holder [of shares] at the time of bringing the action and that he was such a holder [of shares] at the time of the transaction of which he complains.”
This section has been interpreted as requiring a plaintiff in a shareholder derivative action to not only have been a shareholder at the time of the transaction complained of as well as at the time of the commencement of the action, but also that the plaintiff maintain its shareholder status throughout the pendency of the action without interruption. (Independent Investor Protection League v Time, Inc., 50 NY2d 259; Karfunkel v USLIFE Corp., 116 Misc 2d 841, affd 98 AD2d 628; Sorin v Shahmoon Indus., 30 Misc 2d 408; Snyder v Pleasant Val. Fishing Co., 756 F Supp 725 [SD NY 1990].) If the plaintiff’s shares are disposed of during pendency of the action, the action abates (supra; see also, Amella v Consolidated Edison Co., 73 NYS2d 263, affd 273 App Div 755; *284 Hayman v Morris, 46 NYS2d 482). Furthermore, New York courts have generally held that the pursuit of an appraisal proceeding constitutes a dissenting shareholder’s exclusive remedy (Business Corporation Law § 623 [c]; Alpert v 28 Williams St. Corp., 63 NY2d 557, 567) unless the merger itself is challenged (see, Miller v Steinbach, 268 F Supp 255 [SD NY 1967]).
Various courts outside this jurisdiction, particularly courts interpreting Delaware’s similar statute, have applied this rule and dismissed the cause of action where the stock of plaintiff shareholders had been acquired through a cash-out merger. (Scattergood v Perelman, 945 F2d 618, 626 [3d Cir 1991]; Blasband v Rales, 971 F2d 1034, 1041 [3d Cir 1992]; Friedman v Mohasco Corp., 929 F2d 77, 79 [2d Cir 1991]; Lewis v Anderson, 477 A2d 1040, 1044, n 3.) The rationale applied in these cases is that a plaintiff who ceases to be a shareholder by reason of merger has no rights in the surviving corporation predating the merger, and, therefore, has no standing to assert derivative claims on behalf of the surviving corporation.
Both parties rely heavily on Rubinstein v Catacosinos (91 AD2d 445, affd 60 NY2d 890). In Rubinstein, Applied Digital Data Systems (ADDS) was acquired through a cash-out merger several months after plaintiff therein had initiated a derivative action on behalf of ADDS. Pursuant to the terms of the merger, the surviving corporation became a wholly owned subsidiary of NCR Corporation (NCR) and each share of the acquired corporation’s stock was converted into the right to receive cash or to have the stock valued at a statutory appraisal proceeding pursuant to Delaware law (91 AD2d, at 445-446). The defendants in Rubinstein moved to dismiss the action on the grounds that the merger divested the plaintiff of her shareholder status and, therefore, precluded plaintiff from maintaining a derivative action on behalf of the acquiring corporation.
The Appellate Division stated in relevant part:
"It is settled law that a plaintiff stockholder in a stockholder’s derivative action loses his right to continue to prosecute the action if he ceases to be a stockholder. (Tenney v Rosenthal, 6 NY2d 204, 210; Bernstein v Polo Fashions, 55 AD2d 530.) This rule has been applied where the stockholder ceases to be a stockholder by reason of his tendering shares to secure statutory appraisal. (Pikor v Cinerama Prods. Corp., 25 FRD 92 [SDNY].)
*285 "It makes particular sense to apply this rule to the present case where as a result of the merger plaintiff is entitled only to a specified amount of money, thus becoming more like a creditor than a stockholder * * * ADDS’ sole stockholder is NCR and it has not indicated any desire to prosecute the case; nor has any stockholder of NCR. Plaintiff will get no benefit from the judgment. There is no reason to permit plaintiff, who has no interest in the case, to force upon ADDS and its stockholders, direct or indirect, a lawsuit for their supported benefit in which they are not interested.
"Section 906 (subd [bj par [3]) of the Business Corporation Law, which permits the continuation of a shareholder’s action on behalf of a merged corporation, should fairly be construed to mean the continuation of the claim on behalf of the corporation but not to preserve standing of a now nonstockholder to enforce that claim on behalf of the corporation against that corporation’s will” (91 AD2d, at 446-447 [emphasis added]).
In affirming the Appellate Division’s decision the Court of Appeals stated in relevant part (supra, at 892): "In so ruling, we deem it necessary to add the following comments. First, section 906 of the Business Corporation Law is not one of the enumerated laws specifically applicable to foreign corporations doing business in New York (Business Corporation Law, § 1319, subd [a]).” Since ADDS was a Delaware corporation, the argument is made that the Court of Appeals by such comment disavowed the Appellate Division’s finding as to the meaning and scope of section 906 (b) (3) of the Business Corporation Law. Plaintiffs argue that their claims herein are preserved by Business Corporation Law § 906 (b) (3) which provides in relevant part that when a merger has been effected: "No action or proceeding, whether civil or criminal, then pending by or against any such constituent corporation, or any shareholder, officer or director thereof, shall abate or be discontinued by such merger or consideration, but may be enforced, prosecuted, settled or compromised as if such merger or consolidation had not occurred, or such surviving or consolidated corporation may be substituted in such action or special proceeding in place of any constituent corporation.”
Plaintiffs argue that the Appellate Division’s interpretation of Business Corporation Law § 906 (b) (3) in Rubinstein (supra) is, at best, dicta and that since the Court of Appeals specifically declined to apply section 906 (b) (3) in its affirmance, the instant action should survive on the basis of the statute. At *286 least one commentator has indicated that, had the corporation at issue in Rubinstein been a domestic corporation, as in the instant action, the plaintiffs would have retained standing (see, 3 White, New York Corporations § 626.03, n 55.2).
Plaintiffs also rely on Bokat v Getty Oil Co. (262 A2d 246 [Del 1970]) and its progeny (see, Abrams v Occidental Petroleum, 20 Fed R Serv 2d [Callaghan] 170 [SD NY 1975]; Susman v Lincoln Am. Corp., 587 F2d 866 [7th Cir 1978]; see also, Albert v Salzman, 41 AD2d 501). Plaintiffs argue that the court in Bokat implicitly held that plaintiffs in a derivative action may retain standing postmerger.
Defendants argue that the Appellate Division decision in Rubinstein (supra) bars the instant action. Defendants reason that that part of the Court’s ruling stating that a plaintiff in a derivative action "loses his right to continue to prosecute the action if he ceases to be a stockholder” was affirmed and not qualified or modified by the Court of Appeals. Defendants also contend that the Appellate Division’s construction of Business Corporation Law § 906 (b) (3), regardless of the Court of Appeals holding, is valid, logical and has been relied on by other courts (see, e.g., Friedman v Mohasco Corp., supra, at 79).
This court finds the defendants’ arguments convincing. The Appellate Division’s ruling in Rubinstein (supra) is binding and its interpretation of Business Corporation Law § 906 (b) (3) — while it may be dicta — is persuasive. Business Corporation Law § 906 (b) (3) was clearly only meant to allow the survival of a cause of action brought by or against the corporation, but does not allow a nonshareholder to maintain a derivative action, it does not confer standing on a former shareholder, it only permits causes of action to exist. The causes of action may only be prosecuted by plaintiffs with proper standing. Plaintiffs herein have lost their standing to continue to prosecute these actions.
To the extent that they hold otherwise, Bokat and Abrams (supra) relied upon by plaintiffs have been discredited or overruled by subsequent courts. Indeed, the Supreme Court of Delaware in explaining its ruling in Bokat, pursuant to Delaware Code Annotated, tit 8, § 261 (Corporation Law), specifically rejected any interpretation of its prior ruling as allowing a plaintiff in a derivative action postmerger standing. (Lewis v Anderson, supra, at 1049.) The court notes that Business Corporation Law § 906 (b) (3) is identical in effect to Delaware Code Annotated, tit 8, § 261.
*287 The other cases relied upon by plaintiff are either not on point or not supportive of their position. Independent Investors Protective League v Time, Inc. (supra) did not involve a cash-out merger but rather a corporate dissolution. The Court of Appeals reasoned that a plaintiff may maintain a derivative action postdissolution because: "At a minimum, the stockholder possesses a substantial interest in the distribution of corporate assets. And, even if dissolution and distribution of assets are accomplished contemporaneously, the shareholder’s stake in any cause of action existing in favor of the corporation remains quite real (supra, at 264).
No such interest exists here where the stock is being acquired through a cash-out merger (see, 3 White, New York Corporations § 626.3 [1], n 55.1).
Similarly, other cases relied upon by plaintiffs involved not a cash-out merger but an exchange of stock for stock to effect a merger where the plaintiffs maintained their shareholder status after the merger (see, Albert v Salzman, 41 AD2d 501, supra; Marco v Sachs, 201 Misc 934, affd 279 App Div 1085, affd 304 NY 912; Platt Corp. v Platt, 21 AD2d 116, affd 15 NY2d 705; Holmes v Camp, 186 App Div 675, affd 227 NY 635; Fischer v CF & I Steel Corp., 599 F Supp 340 [SD NY 1984]; Miller v Steinbach, supra). Additionally, two of the cases relied on by plaintiffs did not involve a merger at all. In Pearlman v Feldmann (219 F2d 173 [2d Cir 1955], cert denied 349 US 952) a controlling shareholder was sued by minority shareholders after having sold his interest in the corporation, but the corporation was not the subject of a merger and did not change its form in any way. Slade v Endervelt (174 AD2d 389) similarly did not involve a merger.
Since plaintiffs do not now have standing to bring the actions, the actions are dismissed. In view of the above, the court has not reached the issues of the demands made, or not made, to the Grumman board of directors to bring the actions.
Accordingly, the defendant’s motions to dismiss these actions are granted.